City of Cincinnati, Appellee, *v.* Duhart, Appellant.

(No. C 73-470—Decided June 10, 1974.)

*Mr. Thomas A. Luebbers,* city solicitor, and *Mr. Paul J. Gorman* and *Mr. Phillip A. Logan,* for appellee.
*Mr. Morris G. Sullivan,* for appellant.

Lynch, P. J. Defendant, appellant herein, is appealing his conviction in the Hamilton County Municipal Court on April 13, 1973, for operating a motor vehicle on February 10, 1973, while under the influence of alcohol, in violation of Section 506.1 of the Code of Ordinances of the City of Cincinnati.

Defendant's first assignment of error is that the trial court erred in refusing his motion to exclude the breathalyzer test, made by him at the time of his arrest, at the conclusion of the prosecutor's case and again at the conclusion of the defendant's case, which motions were based upon the ground that the prosecution failed to lay a proper foundation for the admission of the test.

We approve and follow the first paragraph of the syllabus in *State* v. *Miracle*, 33 Ohio App. 2d 289, which is as follows:

"1. By virtue of R. C. 4511.19, before testimony as to the results of a breathalyzer test may be admitted into evidence, and before any consideration of the presumption set forth in such section may be had by the trier of fact, the following facts pertaining to the breathalyzer tests must be affirmatively established:

"a. The specimen subject of the test must be withdrawn within two hours of the time of such alleged violation;

"b. The substance of the specimen shall be analyzed in accordance with methods approved by the director of health;

"c. The analysis shall be made by an individual possessing a valid permit issued by the director of health, pursuant to R. C. 3701.143."

The record establishes that the breathalyzer test was administered within two hours of defendant's arrest; that the police officer who administered this test had a senior operator's permit from the Director of Health; and that the police officer observed defendant for a period of time before administering the breathalyzer test, during which time he had defendant perform psychomotor tests. The police officer testified further that he followed the stand-

ard green check-off list procedure in conducting this test.

The police officer balanced the machine and ascertained that the machine had been calibrated less than ten days previously; that the calibration was .00; that the temperature was 50° centigrade; that no foreign substance was in the machine; and that the machine was operating correctly. The result of the breathalyzer test of defendant was .21% blood alcohol by his weight.

Defendant moved to exclude the result of the breathalyzer test based on *State* v. *Miracle, supra,* because there was no testimony that the methods used by the police officer were the same methods approved by the Director of Health. The trial court overruled defendant's motion.

The facts in this case are more similar to *State* v. *Sickles,* 25 Ohio App. 2d 1, than *State* v. *Miracle, supra,* because the police officer who administered the breathalyzer test testified in detail as to the method he followed in performing the breathalyzer test on defendant.

Upon appeal on questions of law, all reasonable presumptions consistent with the record will be indulged in favor of the validity of the judgment under review and of the regularity and legality of the proceedings below. *Beach* v. *Sweeney,* 167 Ohio St. 477; 3 Ohio Jurisprudence 2d 666-668, Appellate Review, Section 715.

The proceedings of a trial court are deemed correct unless error affirmatively appears on the face of the record, and the burden is upon one who claims the existence of error to show that error has occurred. *Makranczy* v. *Gelfand,* 109 Ohio St. 325; *State, ex rel. Fulton,* v. *Halliday,* 142 Ohio St. 548; 3 Ohio Jurisprudence 2d 670, Appellative Review, Section 716.

The pertinent part of Rule 16(E) of the Rules of Apppellate Procedure is as follows:

"If determination of the assignments of error presented requires the consideration of provisions of * * * rules or regulations, the relevant parts thereof shall be reproduced in the brief or in an addendum at the end, or may be supplied to the court in pamphlet form."

This assignment of error is based upon defendant's

contention that the methods used by the police officer in this case were not the same methods approved by the Director of Health.

The first paragraph of the syllabus in *State* v. *Hall*, 39 Ohio App. 2d 87, is as follows:

"1. A court can take judicial notice of the rules and regulations adopted by the Director of Health as to the method of giving a breathalyzer test for the purpose of determining intoxication pursuant to R. C. 4511.19."

The Director of Health has promulgated regulations on Alcohol Testing, Approval and Permit Program, which are available from the Alcohol Testing, Approval and Permit Program, Ohio Department of Health, 450 East Town Street, P. O. Box 118, Columbus, Ohio 43216.

The writer of this opinion found that neither the Hamilton County Law Library nor the Mahoning County Law Library has copies of such regulations. Because of this fact, we obtained a copy of these regulations from Mr. Leonard J. Porter, Chief of the Alcohol Testing, Approval and Permit Program, and, with the cooperation of Mr. Porter, the applicable regulations for breathalyzer tests to determine the concentration of alcohol in a person's blood by breath analysis are attached to this opinion as Appendix A.

Breath tests done pursuant to R. C. 4511.19 shall be performed by a person with a senior operator permit issued by the Director of Health or an operator who is under the general direction of such senior operator. HD-1-07 (C), (D) and (E), and HD-1-09, Appendix A.

The Breathalyzer is an approved breath testing instrument. The calculation of the blood alcohol concentration shall be on the basis of alveolar air to blood ratio of 2,100:1 and of mixed air to blood ratio of 3,200:1. Breath samples shall be analyzed according to instructions of the manufacturer of the instrument or instructions issued by the Director of Health. HD-1-02, Appendix A.

A copy of the Breathalyzer Operational Check Test, which is issued by the manufacturer of the Breathalyzer pursuant to HD-1-02, is attached to this opinion as Appen-

dix B. It is green in color and is often referred to by operators of the Breathalyzer as the standard green checkoff list. Mr. Leonard J. Porter, Chief of the Alcohol Testing, Approval and Permit Program, describes this Breathalyzer Operational Check List "as the on the spot criteria for the operation of the instrument known as the Breathalyzer."

The Director of Health has published the "General Manual for the Breathalyzer, Its Operation, Care and Maintenance," pursuant to HD-1-02(A) which is available from the Alcohol Testing, Approval and Permit Program, Ohio Department of Health, 450 East Town Street, P. O. Box 118, Columbus, Ohio 43216. Chapter II of this manual is on "Operation of the Breathalyzer." According to Mr. Leonard J. Porter, this Chapter II is the "detailed explanation of the operational check list promulgated by the Ohio Department of Health for two reasons: first, to explain the concept of occurrences achieved by the steps detailed in the Operational Check List and, second, to show conformity in the instructions of the Director of Health and the criteria established by the manufacturer. Thus, they do incorporate the instructions of the manufacturer, and they do include all the instructions as to the operation of the Breathalyzer that are required under HD-1-02 (A)." Chapter III of this manual is on "Maintenance of the Breathalyzer."

The Breathalyzer must be calibrated no less frequently than after every ten tests, or after any nine days if fewer than ten tests are performed in any nine-day period by a senior operator using appropriate solutions of ethyl alcohol and using methods and techniques for calibration recommended by the manufacturer of the calibration instrument or the Director of Health. HD-1-04(A). Appendix A.

Results of tests for calibration shall be kept in a permanent record book. HD-1-04(C) and HD-1-01(A), Appendix A.

Defendant has not recited any regulation of the Director of Health, either during the trial or in his brief

before this court, to support his contention that the methods used by the police officer in this case were not the same methods approved by the Director of Health. As a result, we do not know what specific regulation of the Director of Health defendant contends was not followed in this case, and the record does not reveal that any regulation of the Director of Health was not followed. We hold that defendant has not sustained his burden of showing the existence of error under this assignment of error.

We hold further that the result of a breathalyzer test is admissible in evidence under the facts of this case where the police officer who administered a breathalyzer test pursuant to R. C. 4511.19 testified that he had a senior operator's permit from the Director of Health; that the test was administered within two hours of defendant's violation; that he observed defendant for a period of time before administering the breathalyzer test, during which time he had defendant perform psychomotor tests; that the Breathalyzer was calibrated less than ten days previously; that he followed the Breathalyzer Operational Check List and cited some of the results of his preliminary investigation of the instrument, and that the Breathalyzer was operating correctly, before relating the result of the breathalyzer test.

We find defendant's first assignment of error to be without merit.

Defendant's second assignment of error is that the trial court erred, as a matter of law, in its judgment convicting him of the charge of driving while under the influence of alcohol. Upon a review of the entire record of this case, we find that the following facts in this case, separate from the breathalyzer test, support the judgment in this case.

The police officer who arrested defendant also administered the breathalyzer test. He testified that on February 10, 1973, he observed defendant straddling the white traffic divider, and his automobile was weaving. After the police officer stopped defendant and asked him to step out of the car and show his driver's license, de-

fendant staggered when he stepped out of his car and weaved as he walked. He fumbled through his wallet trying to locate his driver's license. The police officer noticed a strong odor of alcohol on defendant's breath. Defendant's eyes were red and his clothes were disarranged. The police officer had to repeat everything two or three times before defendant understood.

The police officer had defendant perform psychomotor tests. On the balance test, defendant wobbled back and forth. When defendant attempted to touch his nose with his finger, he completely missed his nose and touched the lower part of his lip. When defendant walked a line, he was swaying, and, on the turns, he was falling off. Defendant did not want to do the coin test. Defendant admitted to the police officer that he had drunk two beers. The police officer, who had five years experience and had observed hundreds of intoxicated persons, testified that, in his opinion, based upon the condition of defendant at the time of his arrest, defendant "was extremely under the influence of an alcoholic beverage."

Since we have held that the result of the breathalyzer test was also competent evidence against defendant, we find that the judgment of the trial court is amply supported by the facts of this case.

We find defendant's second assignment of error to be without merit.

*Judgment affirmed.*

DONOFRIO and O'NEILL, JJ., concur.

DONOFRIO, O'NEILL and LYNCH, JJ., of the Seventh Appellate District, sitting by designation in the First Appellate District.

### APPENDIX A

Applicable Regulations of Director of Health to
Breathalyzer Tests
Furnished by Mr. Leonard J. Porter, Chief of the
Alcohol Testing, Approval and Permit Program of the

Ohio Department of Health by letter dated May 13, 1974, at the request of the Seventh District Court of Appeals.

"HD-1-01. *Techniques or methods.*

"(A) Tests to determine the concentration of alcohol in a person's blood may be applied to blood, urine, breath, or other bodily substance. Results shall be expressed as equivalent to grams of alcohol per one hundred (100) milliliters of blood. The results of the tests shall be entered in a permanent record book.

"(B) Written methods or techniques for performing tests in use under division (A) of this regulation shall be on file in the area where tests are performed."

"HD-1-02. *Breath tests.*

"(A) Breath samples of alveolar air shall be analyzed with instruments specifically designed for the analysis of breath. The calculation of the blood alcohol concentration shall be on the basis of alveolar air to blood ratio of 2,100:1 and of mixed expired air to blood ratio of 3,200:1. Breath sample shall be analyzed according to instructions of the manufacturer of the instrument or instructions issued by the director of health.

"(B) The following breath testing instruments are approved:

"(1) Breathalyzer;
"(2) Portable intoximeter;
"(3) Photo-electric intoximeter;
"(4) DPC intoximeter;
"(5) Drunkometer;
"(6) Alcometer;
"(7) Breath tester;
"(8) Sober-meter model III;
"(9) Sober-meter model IV."

"HD-1-04. *Calibration.*

"(A) Breath testing instruments, except the portable intoximeter and the sober-meters, must be calibrated no less frequently than after every ten (10) tests, or after any nine (9) days if fewer than ten (10) tests are performed in any nine (9) days period, by a senior operator using appropriate solutions of ethyl alcohol, and using methods

and techniques for calibration recommended by the manufacturer of the calibration instrument or the director of health.

"* * *

"(C) Results of tests for calibration shall be kept in the permanent record book required by division (A) of regulation HD-1-01."

"HD-1-07. *Qualifications of personnel.*

"* * *

"(C) Breath tests shall be performed by a senior operator or an operator who is under the general direction of a senior operator. A senior operator shall be responsible for the care, maintenance, and caliberation of the testing instruments. Senior operators shall perform or direct only those breath tests for which they have been issued a permit by the director of health under regulation HD-1-09. Operators shall use only those instruments for which they have been issued a permit by the director of health under regulation HD-1-09.

"(D) A person meets the qualifications for a senior operator's permit by:

"(1) Being a high school graduate; or

"(2) Passing the "General Education Development Test"; or

"(3) Having not less than three years experience in the operation, care, and maintenance of the breath testing instrument for which a senior operator's permit is sought prior to March 1, 1968; and

"(4) Having completed training approved by the director of health or passing a test prescribed and provided by the director for each type of approved breath testing instrument for which he seeks a permit.

"(E) A person meets the qualifications for an operator's permit if a senior operator certifies to the director of health that the applicant:

"(1) Is a high school graduate; or

"(2) Has passed the "General Education Development Test"; or

"(3) Has not less than three years experience in the

operation of the breath testing instrument for which an operator's permit is sought prior to March 1, 1968; and

"(4) Has received instruction in the operation of the breath testing instrument for which permit is sought by a senior operator holding a senior operator's permit for such instrument; and

"(5) Can properly operate the breath testing instrument for which a permit is sought."

"HD-1-08. *Surveys and profficiency tests.*

"Persons who are issued a permit under regulation HD-1-09 shall be subject to periodic on-site surveys by representatives of the director of health, and shall accept samples, perform tests and report the results of such tests to the director or his authorized representative. These tests shall be used to evaluate the accuracy of the analyses performed by the permit holder."

"HD-1-09. *Permits.*

"(A) Laboratory directors, technicians, senior operators, and operators shall apply to the director of health for individual permits on forms prescribed and provided by the director.

"(B) The director of health shall issue appropriate permits to perform tests to determine the amount of alcohol in a person's blood to persons who qualify under the applicable provisions of regulation HD-1-07.

"(C) Permits for senior operators and operators shall terminate two (2) years from the date issued unless terminated or revoked prior to such date. A person may apply for renewal of his permit and the director of health shall issue such permit if the applicant presents evidence satisfactory to the director that he has attended an educational course approved by the director prior to his application for renewal."

"HD-1-10. *Revocation.*

"The director of health may at his discretion terminate or revoke the permit of any permit holder:

"(A) Who obtains a permit falsely or deceitfully;

"(B) Who fails to comply with any of the provisions of regulations HD-1-01 to HD-1-09, inclusive;

"(C) Who fails to demontsrate satisfactory accuracy in the analyses of samples provided by the director of health."

"It is to be noted that the following regulations of the Ohio Department of Health on Alcohol Testing, Approval and Permit Program are not applicable to breathalyzer tests:

"HD-1-03
"HD-1-05
"HD-1-06
"HD-1-07 (A) and (B)."

Subsequent to the writing of this opinion, Mr. Leonard J. Porter, Chief of the Alcohol Testing, Approval and Permit Program of the Ohio Department of Health by letter dated October 22, 1974, at the request of the Seventh District Court of Appeals, submitted the enclosed two instructions issued pursuant to the regulations set out above.

Breath Testing Instrument Log Book

The Department of Health Regulations require a permanently bound record book be kept on each instrument. This book should indicate all repairs, maintenance, and tests performed by the particular instrument it represents. The calibration records (every nine (9) days or every ten (10) tests, whichever occurs first) are also logged in this book. Calibrations are to be entered in red ink, and all other matters entered in blue/black ink.

NAME OF SUBJECT      A      DATE    B    NO.    C

TIME OF TEST  D   A.M. P.M. BLOOD ALCOHOL O.  E  % LOT NO. F

OPERATOR          G          WITNESS        H

REMARKS          I

A. Name of person tested, or calibration, batch, and bottle number.
B. Month, day, and year.

C. Slate No., arrest No., or other subject identifying No. (optional).

D. Hour and minute when subject blew into instrument.

E. Result of test in percentage of blood alcohol, results to always be expressed in two digits.

F. List control number of test ampoule.

G. Signature of person giving test.

H. Signature of the witness to the reading of the Implied Consent Law.

I. a) Pertinent statements regarding test or subject.

   b) List repairs.

   c) List all refusals.

   d) Optional.

The Report of Analysis form sent out by the Department of Health, Alcohol Testing, Approval & Permit Program with each bottle of solution contains the batch number, bottle number, date prepared, ethyl alcohol in distilled water concentration, and the percent of blood alcohol it will produce on the instrument when operated properly.

This solution is to be used for three (3) months from date of first use, and must be refrigerated. The batch, bottle number and date must be entered in the permanent record book, reference HD-1-04. Calibration, item (C). When first put into use, all following calibrations are to indicate the batch and bottle number, date of first use in remark section of log entry, as well as referring to log entry page where first used.

Requirements For Calibration Of
Breath Testing Instruments

1. All breath testing instruments designated by the Department of Health must be calibrated every nine days or ten tests, whichever comes first, by a person holding a valid senior operator's permit. (ODH-1-104)

2. Make a visual inspection of the entire instrument, as the initial step. Clean the face panel, ampoule holders, and the sample tube when necessary.

3. Run a simulation test on the instrument, using the complete check-off list. The simulator or equilibrator is to

contain a water-alcohol solution that is no more than three (3) months old. (This solution is supplied by this office upon request.) The tolerance between the instrument analysis and solution should be no greater than plus-minus 0.005%.

4. Check the time element during all cycles of operation. Adjust or repair in accordance with training manual.

5. Check for proper air volume and temperature on instruments to which this applies.

6. When the instrument has been repaired by either the senior operator or a service department it is mandatory that it be calibrated prior to being put back into service.

7. In that instance in which a department has two instruments and one is used solely as a backup instrument, it is not necessary to calibrate the backup instrument every nine days or ten tests as previously indicated. It will, however, be necessary to calibrate the spare instrument before it can be used to make a valid breath test.

8. Every calibration and all repairs made on the instrument are to be entered in the log book using red ink.

### Sample

NAME OF SUBJECT: Calibration test/solution number

DATE: Current No. Optional

a.m.
TIME OF TEST: Current p.m. BLOOD ALCOHOL O. Results %

LOT NO. Ampoule Number

OPERATOR: Senior operator signature    WITNESS:    None needed

REMARKS: List any repairs, cleaning, out-of-service and dates, etc.

### Appendix B

Instructions By The Manufacturer On The
Operation Of The Breathalyzer.
Furnished by Mr. Leonard J. Porter, Chief of the Alcohol Testing, Approval and Permit Program of the

Ohio Department of Health by letter dated May 13, 1974, at the request of the Seventh District Court of Appeals.

Breathalyzer Operational Check List

Name of subject ........................ Date .........
Time (of test).. Blood Alcohol 0... % Ampul Control No...
Operator ................... Witness ...............
Instrument .............................. No. ......

V

1. [ ] Observe subject for twenty minutes prior to testing to prevent oral intake of any material.

Preparation

2. [ ] Throw switch to "on", wait until thermometer shows 50° plus-minus 3°C.
3. [ ] Gauge test ampul and insert in left-hand holder.
4. [ ] Gauge test ampul open, insert bubbler and connect to outlet.

Purge

5. [ ] Turn to take, flush out, turn to analyze.
6. [ ] When red empty signal appears, wait 1½ minutes, turn on light, balance.
7. [ ] Set blood alcohol pointer on start line.

Analysis

8. [ ] Turn to take, take breath sample, turn to analyze (record time).
9. [ ] When red empty signal appears, wait 1½ minutes, turn on light balance.

Record answer, dispose of test ampul, turn control knob to "off"