THE STATE OF OHIO, APPELLANT, *v.* GRAY, APPELLEE.

(No. 80-B-7—Decided October 9, 1980.)

*Mr. Edward Sustersic,* prosecuting attorney, and *Mr. James L. Nichelson,* for appellant.

*Mr. Rodney D. Hanson,* for appellee.

LYNCH, J. Plaintiff is appealing the decision of the Belmont County Court, Western Division, dated February 25, 1980, which sustained defendant's motion to suppress the results of an intoxilyzer test. This appeal is filed pursuant to Crim. R. 12(J).

On August 18, 1979, at 11:46 p.m., defendant was arrested for operating a vehicle while under the influence of alcohol in violation of R.C. 4511.19. He was administered an intoxilyzer test which recorded a result of 0.146 percent at 12:13 a.m., on August 19, 1979.

On November 14, 1979, defendant filed a motion to suppress the results of the intoxilyzer test for the following grounds:

"The regulations of the Department of Health regarding the breath testing instrument require calibration every nine (9) days or ten (10) tests whichever comes first. The calibration previous to the test was test report number 210555. The intoxilyzer test report for the test given Mr. Gray was 210553 and the subsequent calibration was intoxilyzer test report number 210504. It is obvious that the test reports were out of sequence and that there is no way to account for the missing intoxilyzer test reports, therefore rendering the test given Mr. Gray invalid and in violation of the requirements of the Department of Health. Further, it is obvious that the Department of Health regulations require calibrations to be kept in a permanently bound book, *Cincinnati* v. *Duhart,* 41 Ohio App. 2d 127 [69 O.O.2d 479] (1954)."

Ohio Adm. Code 3701-53-04(A) provides, in pertinent part, as follows:

"Breath testing instruments * * * must be calibrated no less frequently than

after every ten (10) tests, or after any nine (9) days if fewer than ten (10) tests are performed in any nine (9) day period, by a senior operator using appropriate solutions of ethyl alcohol, and using methods and techniques for calibration recommended by the manufacturer of the calibration instrument or the director of health."

Results of tests for calibration shall be kept in a permanent record book. Ohio Adm. Code 3701-53-04(C) and 3701-53-01(A). *Cincinnati* v. *Duhart* (1974), 41 Ohio App. 2d 127, 131 [69 O.O.2d 479].

A determinative issue in this case is the legal significance of the following instructions that appear on the upper left hand corner of the "Intoxilyzer Test Report" that is issued by the Ohio Department of Health and which was used in this case:

"Distribution:

White — To Court Officer with Original of Alcoholic Influence Report.

Yellow — File at Instrument Site.

Pink — To State Department of Health.

"Voided Copies:

Distribution as above. All report numbers must be accounted for."

At the hearing on subject motion, Lieutenant Neil R. Sanders, Post Commander of the St. Clairsville Post of the Ohio State Highway Patrol, testified that the state patrol receives pre-printed Intoxilyzer Test Reports from the Department of Health in a package of fifty to one hundred; that such package may be split to supply the needs of the various posts throughout the state; that in subject post, such forms are placed in a drawer in unbound form and a form is removed from the top as the need arises; that each form has a pre-printed Department of Health number on the upper right hand corner and has a blank space on the lower center part of such form for the page number of the log book in which such test was recorded; that such post does not use the Department of Health number for record purposes on such form; that such post has a bound log book which has a hard front and back cover with rods through it; that holes are made in such report forms; that after each report form is completed, it is numbered in sequence in the order that it is inserted in the log book; that a report form is filed in the log book for each calibration and for each test whether partially or completely given or refused; that such log book is maintained as a permanent record at such post; and that if prior to the administration or refusal of the test a mistake is made in filling out the report, the officers are instructed to mark "void" across the form and send all copies to the Department of Health.

Introduced into evidence was D.X. 2 which was the intoxilyzer test of defendant dated August 19, 1979 which was recorded on page 1325 of such post log book and which had Department of Health No. 210553; D.X. 1 which was the calibration of the solution on August 15, 1979 which was recorded on page 1318 of such post log book and which had Department of Health No. 210555; and D.X. 3 which was the calibration of the solution on August 20, 1979, which was recorded on page 1327 of such post log book and which had Department of Health No. 210504.

In the trial court, defendant contended that the Department of Health regulations as to keeping the results of tests for calibration in a permanent record book had not been complied with but the trial court did not discuss this contention of defendant. The record supports the implied finding of the trial court that the log book of the Intoxilyzer Test Reports of the St. Clairsville Post of the Ohio State Highway Patrol complies with the above-mentioned regulations.

Subject log book establishes that the Intoxilyzer Test Report of defendant was

the seventh test after the last calibration which was four days previous. Therefore, as far as the records show, the regulations as to the calibration of subject intoxilyzer were complied with.

The trial court held as follows:

"* * * the highway patrol does not maintain a standard reference point for its records; chooses to employ administrative procedures which foster confusion as to its sequence of events set forth in the record, and partially complies with the regulations of the Department of Health regarding an accounting and distribution of copies of its records.

"Such methodology does not lay the foundation for competent evidence based on such records and such evidence shall be suppressed."

Plaintiff's only assignment of error is that the trial court erred in sustaining defendant's motion to suppress the results of the intoxilyzer test that was given to defendant on August 19, 1979.

In our opinion the determinative question in this case is whether the practice of the St. Clairsville Post of the Ohio State Highway Patrol of sending all copies of voided Intoxilyzer Test Reports to the Department of Health, in itself, is sufficient grounds to suppress all intoxilyzer tests taken by such post. Another issue which defendant stresses and which the trial court discussed and to which it seemed to give some weight is what effect, if any, does the practice of such St. Clairsville Post of maintaining its log book of Intoxilyzer Test Reports without any reference to the pre-printed numbers of the Department of Health on the Intoxilyzer Test Report form have on the validity of the intoxilyzer tests performed by such post.

The Department of Health is a creature of statute and has only such jurisdiction as is such conferred, and it may not, under rules of its own making or otherwise, confer upon itself further jurisdiction or authority. *State, ex rel.*

*Byrd,* v. *Sherwood* (1940), 140 Ohio St. 173, 181 [23 O.O. 403].

R.C. 4511.19 provides, in pertinent part, as follows:

"* * * Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a vaild permit issued by the director of health pursuant to section 3701.143 [3701.14.3] of the Revised Code. * * *"

R.C. 3701.143 provides, in pertinent part, as follows:

"The director of health shall determine, or cause to be determined, techniques or methods for chemically analyzing a person's * * * breath * * * in order to ascertain the amount of alcohol in a person's blood. * * *"

Ohio Adm. Code 3701-53-02(A) provides, in pertinent part, as follows:

"* * * Breath samples shall be analyzed according to * * * instructions issued by the director of health."

Thus, the legal authority of the Department of Health, as far as Intoxilyzer Test Reports are concerned, is limited to the methods of analyzing breath samples and to the qualifications of the person conducting such test. Its power to regulate voided Intoxilyzer Test Reports in the instant case is limited to the relationship of such reports to the method of analyzing breath samples.

In our opinion the only relationship between the instruction of the Department of Health requiring voided copies of Intoxilyzer Test Reports to be distributed the same as other copies and the method of analyzing breath samples is to insure compliance with the regulation on the calibration of the intoxilyzer. This would be necessary if the report form was voided because of an incomplete breath sample test. In the instant case, the testimony was that the instruction of the Department of Health was complied with as to such report forms.

The only time that an Intoxilyzer Test Report form was voided and that all

copies were sent to the Department of Health in this case was when a mistake was made, such as incorrectly writing the name of the person taking the test prior to the test being given.

In this case, we hold that any relationship between the instruction of the Department of Health to file a copy of such voided Intoxilyzer Test Report in the same manner as other Intoxilyzer Test Reports and the regulation on the calibration of subject intoxilyzer is so minimal that it does not invalidate the intoxilyzer test that is at issue in this case. If copies of such voided copies were in subject log book, they would not affect the regulation on calibration of such intoxilyzer because such voided copies would show that no test was administered on such intoxilyzer for that Intoxilyzer Test Report. Therefore, we hold that the practice of the St. Clairsville Post of the Ohio State Highway Patrol of sending all copies of such voided Intoxilyzer Test Reports to the Department of Health was not, by itself, grounds for suppressing the results of intoxilyzer tests taken by such post and that such test results are admissible as evidence. Any defect caused by the noncompliance with the instruction of the Department of Health in the distribution of such voided Intoxilyzer Test Reports would only go to the weight of such evidence.

As to the contention of defendant that the instruction of the Department of Health on subject Intoxilyzer Test Report form that "[a]ll report numbers must be accounted for," is a requirement that must be established before any intoxilyzer test is valid, we hold that there is no meaningful relationship between such instruction and the calibration regulation of subject intoxilyzer. The Department of Health provides for a space on the Intoxilyzer Test Report form for recording the page number of the log book in which officers of subject post recorded each test that was administered. We believe that this fact supports the practice of subject post of using the page numbers of this log book as a standard reference point for its records, and we do not understand why the trial court finds such practice confusing.

We believe that such instruction is probably a matter between the Department of Health and law enforcement agencies to which such forms are distributed and has nothing to do with the validity of the method to administer the intoxilyzer test. To hold otherwise would arbitrarily and unreasonably frustrate the public policy of permitting chemical analysis of the breath of a person charged with driving a motor vehicle while under the influence of alcohol to be admitted into evidence as provided by R.C. 4511.19.

For the foregoing reasons, we sustain plaintiff's assignment of error.

Judgment reversed. Case remanded for further proceedings in accordance with law.

*Judgment reversed.*

DONOFRIO, P.J., and O'NEILL, J., concur.