DECISION AND JUDGMENT ENTRY
This is an appeal from a decision of the Erie County Court, filed on December 9, 1999, in which the court accepted a no contest plea from appellant, Vincent Gigliotti, to a charge of driving under the influence of alcohol ("DUI") in violation of R.C. 4511.19(A)(3) and found him guilty. The trial court ordered appellant to pay a fine of $1,500 and then suspended all but $500 of the fine. The trial court also suspended all but sixty days of one hundred eighty days it ordered appellant to serve in jail, and put appellant on probation for two years. Finally, the trial court suspended appellant's driver's license until March 7, 2002.
Appellant has presented two assignments of error for consideration on appeal that are:
 "I. The Trial Court erred when it failed to suppress the Appellant's breath test result because the Ohio State Highway Patrol failed to substantially comply with a directive issued by the Ohio Department of Health regarding the initiation of a second twenty minute observation period after a BAC DataMaster breath machine registers an `invalid sample' result."
 "II. The trial court erred in overruling the appellant's motion to suppress the evidence of field sobriety testing where the tests were not properly conducted by the officer."
Before addressing the arguments presented relating to these assignments of error, we will first review the facts and the procedure in this case.
This case began on March 3, 1999 when appellant was charged in the Erie County Court with: (1) DUI, in violation of R.C. 4511.19(A)(3); (2) DUI, in violation of R.C. 4511.19(A)(1); (3) failure to wear a safety belt, in violation of R.C. 4513.263(B)(1); and (4) failure to drive in marked lanes, in violation of R.C. 4511.33. Attached to the charges was a BAC DataMaster Test Report Form that was completed by the state trooper who arrested appellant. The state trooper put a check mark in the box next to the following statement: "1. Observe subject for twenty minutes prior to testing to prevent oral intake of any material." The trooper indicated on the same form that the test results showed that appellant had a breath alcohol content of .297.
Also attached to the charges were two "Evidence Tickets". The first ticket indicated that there was an invalid sample for the BAC DataMaster Test. The second ticket indicated that appellant's breath alcohol content was .297 and that the beginning of the twenty minute observation time was "0241".
Finally, there was a letter from the trooper to the trial judge. In the letter, the trooper stated: "THE DEFENDANT FIRST BLEW INTO THE DATAMASTER, BUT DID NOT CONTINUE TO BLOW WHICH CAUSE [SIC] AN INVALID SAMPLE. THE DEFENDANT ATTEMPTED THE TEST A SECOND TIME WITH THE RESULTS BEING .297 BAC."
On March 8, 1999, appellant entered not guilty pleas to all of the charges. On April 30, 1999, appellant filed a motion to suppress. He raised several arguments in the trial court in support of his motion to suppress, but only one is pertinent to the issues he now raises on appeal: the results of all DUI tests be excluded because they were not done in compliance with guidelines from the training manual of the National Highway Traffic Safety Administration ("NHTSA") and with a directive in a memorandum from the Ohio Department of Health.
In support of his argument, appellant said that the trooper who conducted the BAC DataMaster tests failed to observe him for twenty minutes prior to the time he gave appellant the first test, and failed to re-observe him for another twenty minutes before he gave him a second test. He presented a memorandum from the Ohio Department of Health that contained the following statements:
 "Effective immediately an `invalid sample' indication on the BAC Verifier or BAC DataMaster is to be handled by initiating a new 20 minute observation period. The reason for this change is due to the fact that `invalid sample' may be caused by different things. The operator will no longer have to decide exactly what may have caused the `invalid sample,' the remedy will always be a new observation period."
He said since the trooper did not follow the directive from the memorandum, the BAC DataMaster test results were invalid and could not be introduced against him.
Appellant also argued that the trooper who stopped and arrested him failed to follow the required standards for administering the horizontal gaze nystagmus test ("HGN"). He said that the trooper therefore could not rely upon the results of the HGN test, and that the trooper lacked probable cause to place him under arrest for DUI.
A hearing was held in the trial court regarding the motion to suppress. The state trooper who stopped and eventually arrested appellant testified. He said that he was on duty on March 7, 1999 at 2:30 a.m. when he saw the vehicle appellant was driving brushing against the center median divider that goes over a bridge on State Route 101 in Erie County. He also saw that "at one point his left tire was riding on the center divider." He made a decision to stop appellant for a marked lanes violation.
When he reached appellant's vehicle, he asked for appellant's driver's license and proof of insurance. He said appellant's actions while getting the requested documents were slow. He noticed that appellant's speech was slurred, that appellant had red, bloodshot eyes, and that there was a strong odor of alcoholic beverage coming from appellant's person. He asked appellant how much he had to drink, and appellant answered: "too much".
The trooper testified that he then asked appellant to get out of his vehicle and asked him to do the HGN test. He explained how he performed the test. He said he followed the policies and procedures of the Highway Patrol when administering the test. He testified that when he administered the test, he held the pen approximately an arm's length from the subject's eyes; in this case about two feet out. He said he had no reason to doubt that the guideline in the NHTSA manual was: "`Position the stimulus approximately 12 to 15 inches from the suspect's nose slightly above eye level.'"
The trooper said that he concluded that appellant did not pass the HGN test. He then asked appellant to do the one-leg stand field sobriety test, but appellant said he had a prosthetic leg, and that he could not do the test. The trooper then placed appellant under arrest for DUI.
After the trooper placed appellant under arrest, he took him into custody and drove him to the state trooper's station. At the station, he asked appellant to take the BAC DataMaster Breathalyser test. Appellant agreed to take the test. The trooper testified that he had observed appellant for twenty minutes, and that during that time appellant did not burp, hiccup, cough or do any other action which might produce mouth alcohol. The trooper then had appellant take a breath test. The trooper testified:
 "During the first test, after he was read the Implied Consent Form and agreed to take the test and said he understood the circumstances surrounding it, he took the test — or refused it. The machine went through the proper testing procedures. He was issued the mouth piece and told to take a deep breath and blow into the machine. And at that point, he would blow, stop. Blow, stop. Blow, stop. And, in turn, it refused or it threw out an invalid sample."
The trooper testified that he told appellant that "blowing invalid samples will be marked as a refusal; I'm going to need him to take a deep breath and blow a steady stream of air into the machine. And he agreed he would do it the second time." Through the use of the DataMaster Evidence Tickets and the trooper's testimony regarding their validity, appellant's trial counsel showed that the first invalid test was given at 3:27 a.m. and the second test that registered a BAC of .297 was given at 3:30 a.m. The trooper testified that at the time of the hearing he was aware of a memorandum from the Department of Health requiring a second twenty minute observation period after an invalid BAC DataMaster test. However, he did not know about the memo when he gave appellant the two BAC DataMaster tests at issue in this case.
He testified that there is no requirement in state regulations for a second twenty minute waiting period following an invalid test result. He said the state highway patrol now follows the directive from the memorandum because the troopers are "covered" from guessing what caused the invalid sample.
Appellant then called an official from the Ohio Department of Health to the stand. He testified that he is the Deputy Director, Chief Toxicologist, and Chief of the Bureau of Alcohol and Drug Testing. He testified that the memo in question was issued by his agency under his direction on December 14, 1998. The following exchange took place regarding the reason for the memorandum:
"Q And what was the reason for sending out this memo?
 "A There had been a series of cases in which we had been asked how to deal with the issue of an invalid sample. At this point in time, there are two primary vendors or instruments in the State, and they have their own training materials. In the case of the Intoxilyzer, they indicate invalid is only as a result of mouth alcohol.
"Q Residual mouth alcohol?
 "A That is correct. The case of National Patent, who has the Data Master, they indicate a whole series of possibilities, including a chance of mouth alcohol.
 "Also, when these companies have been asked over time what their recommendations are on how quickly to sample after, there was a wide variation. And it's been our opinion that if the invalid is as a result of mouth alcohol, which can actually be seen on the display of the units, then the individual performing the test should wait 20 minutes to eliminate or essentially to clear mouth alcohol from the individual so that the test is now consistent.
"Q And that was the purpose of that directive?
"A That was the purpose of that directive.
 "Q And, basically, the directive indicates the operator will no longer have to decide exactly what may have caused the invalid sample, the remedy will always be a new observation period?
 "A The recommendation was, again, if mouth alcohol was thought to be the case or if the operator did not know what the case was, how to deal with the Defendant to observe, then waiting would eliminate the issue of mouth alcohol.
"Q Okay.
 "A Invalid could be something else, but it would eliminate mouth alcohol possibility."
He further testified that the memorandum was a recommendation, and that it had not been enacted as a regulation.
After the hearing, both parties submitted briefs to the trial court. On September 8, 1999 the trial court filed a judgment entry that contained its ruling denying appellant's motion to suppress. The trial court found that the trooper had reasonable suspicion of criminal activity to support the initial stop of appellant, and probable cause to arrest appellant for DUI. The trial court noted that the memorandum from the Ohio Department of Health did not rise to the level of an administrative regulation. The trial court found that the testimony of the official from the Ohio Department of Health showed "that a display on the machine will notify the operator of the presence of mouth alcohol, if same is invalidating the test." The official testified that if the display is normal during a test that registers invalid, no second twenty minute observation period would be necessary before a second test is given. The trial court therefore ruled that "there is no valid basis upon which to exclude the breath test based upon the subject December 14, 1998 memorandum from the Department of Health."
Appellant subsequently agreed to plead no contest to a charge of DUI in violation of R.C. 4511.19(A)(3). The trial court ruled that the charge for DUI in violation of R.C. 4511.19(A)(1) merged with the charge filed under R.C. 4511.19(A)(3) and was dismissed. The trial court filed separate judgment entries noting that the remaining charges for crossing over marked lanes and failing to wear a seat belt were dismissed at the request of the prosecutor. Appellant then filed this appeal from the trial court's finding that he was guilty of the DUI charge pursuant to R.C. 4511.19(A)(3) and from the sentence the trial court imposed.
In support of his first assignment of error, appellant argues that the trial court erred when it did not suppress the results of his second BAC DataMaster test. He says that the test was rendered invalid when the trooper failed to conduct a second twenty minute observation of appellant before administering the second test. As he did in the trial court, he points to the memorandum from the Ohio Department of Health to support his argument. He acknowledges that the official from the Ohio Department of Health testified that the additional twenty minute observation period should only be used if the operator was unsure of the cause of the invalid test or if the operator could determine from the display that the cause of the invalid test was mouth alcohol. However, he argues that "the order made it clear that the second twenty minute observation period should be observed for every invalid sample result."
Appellant says that breath test results cannot be admitted into evidence unless the state can show that the test was administered in compliance with the methods approved by the Director of Health. He says in this case it is undisputed that the test was not administered in compliance with the directives of the Director of Health because the trooper did not observe appellant for a second twenty minute waiting period before he gave appellant a second breath test. Indeed, the evidence shows that the trooper waited no more than four minutes before giving appellant a second test. Appellant says that the four minute wait cannot be considered substantial compliance with the procedures mandated by the Ohio Department of Health for giving a second BAC DataMaster test after a first test is invalid.
We begin our analysis by noting that the charge to which appellant pleaded no contest was brought pursuant to R.C. 4511.19(A)(3). R.C.4511.19(A)(3) provides:
 "(A) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:
" * * *
 "(3) The person has a concentration of ten-hundredths of one gram or more but less than seventeen-hundredths of one gram by weight of alcohol per two hundred ten liters of the person's breath; "
The Supreme Court of Ohio has noted that a prosecution of an individual for a DUI violation pursuant to R.C. 4511.19(A)(3) differs from a prosecution of an individual for a DUI violation pursuant to R.C.4511.19(A)(1). Newark v. Lucas (1988), 40 Ohio St.3d 100, 103. The difference between these two statutory provisions is that the first, R.C. 4511.19(A)(3), is a per se offense for which: "The critical issue at trial is the accuracy of the test, not the behavior of the accused." Id.
at 103. The second statutory provision, R.C. 4511.19(A)(1), is not a perse offense, and the critical issue in a trial brought pursuant to this provision is the behavior of the accused. Therefore, appellant is rightly concerned in this case regarding whether or not the test in question can be relied upon as accurate.
The legislature of Ohio has directed, through R.C. 4511.19, that breath tests for alcohol content be analyzed according to methods approved by the Director of Health and by persons certified by the Department of Health. The Department of Health, in turn, has promulgated several regulations to establish an approved method for analyzing breath tests. See, e.g., Ohio Adm. Code 3701-53-02(A). As the Seventh District Court of Appeals has aptly noted, the crucial question to consider when an accused seeks to suppress breath test results for non-compliance with administrative regulations is whether the non-compliance rendered the test results unreliable. State v. Gray (1980), 4 Ohio App.3d 47, 50,51. See, also, State v. Plummer (1986), 22 Ohio St.3d 292; State v.Steele (1977), 52 Ohio St.2d 187 (substantial compliance with regulations suffices when deviation does not severely bias test results).
In the case at bar, the memorandum from the Ohio Department of Health did not constitute a regulation. The state of Ohio has argued that because it was not a regulation, the directive from the memorandum is not enforceable. This court is not aware of any existing authority that addresses the question of whether a directive in a memorandum from the Ohio Department of Health is unenforceable. Arguably, the memorandum describes a method for conducting the breath test that has been approved by the Director of Health. However, we are troubled by any ruling that would extend the power of the administrative agency of the Ohio Department of Health to affect the methods of conducting and analyzing tests beyond formally enacted regulations. Strict procedures must be followed before a regulation is promulgated, giving all interested parties a chance to comment. No such safeguards are in place for directives issued through memorandums. We therefore agree with the state of Ohio that a directive from a memorandum does not rise to the level of an administrative regulation, and is not enforceable. See, State v.Gray, 4 Ohio App.3d at 50 (administrative authority is creature of statute and cannot expand its own jurisdiction or authority).
However, assuming arguendo that the directive of the memorandum must be considered by the trial court to determine if appellant's breath test was valid, we find that the trial court did not err when it ruled that under the facts and circumstances of this case there was no harm caused by the failure to observe appellant for another twenty minutes before administering the second breath test. Once the trial court heard the pertinent testimony from the trooper who conducted both breath tests, and from the official from the Ohio Department of Health who explained the reason for the directions in the memorandum, the trial court was in a position to rule that the validity of the test results from the second test was not in question, even if the trooper failed to conduct a second twenty minute observation period. Therefore, following the reasoning of the courts cited above for determining if deviations from regulations rendered a test result unreliable and invalid, we conclude that the evidence in this case showed that a deviation from the directive in the memorandum in question did not render the test results unreliable or invalid.
The official from the Ohio Department of Health confirmed that the second twenty minute observation period was only necessary to ensure the validity of the second test if the machine indicated the presence of mouth alcohol during the first invalid test or if the operator could not tell the cause of the first invalid test. Since the trooper in this case could identify a reason other than mouth alcohol for the first invalid test, and since the machine did not indicate the presence of mouth alcohol during the first invalid test, the failure to follow the recommendation in the memorandum for a second twenty minute observation period did not render the results of the second test invalid or unreliable. Accordingly, appellant's first assignment of error is not well-taken.
In support of his second assignment of error, appellant argues that the trial court erred when it refused to suppress the results of the HGN test conducted on appellant by the trooper. Appellant says that the trooper failed to comply with the NHTSA guidelines because he held the pen used in the test more then twelve to fifteen inches from appellant's nose while conducting the test. Appellant says that failure to strictly comply with the NHTSA guidelines renders the results of the test invalid.
The Supreme Court of Ohio recently ruled:
 "1. In order for the results of a field sobriety test to serve as evidence of probable cause to arrest, the police must have administered the test in strict compliance with standardized testing procedures." State v. Homan (2000), 89 Ohio St.3d 421, paragraph one of the syllabus.
In the text of its opinion, the Supreme Court of Ohio made it clear that this ruling applies to HGN tests. Id. at 425. Accordingly, there is merit in appellant's contention that the HGN test results should have been suppressed in his case.
However, our analysis does not stop there, since the Supreme Court of Ohio also stated in State v. Homan:
 "While field sobriety tests must be administered in strict compliance with standardized procedures, probable cause to arrest does not necessarily have to be based, in whole or in part, upon a suspect's poor performance on one or more of these tests. The totality of the facts and circumstances can support a finding of probable cause to arrest even where no field sobriety tests were administered or where, as here, the test results must be excluded for lack of strict compliance." Id. at 427.
In this case, appellant sought to suppress the HGN test on the basis that it was not valid, and that the trooper therefore lacked probable cause to place him under arrest for DUI. Like the trooper in State vHoman, the trooper in this case saw appellant driving erratically prior to the stop, noted that appellant moved slowly when asked to produce his driver's license and proof of insurance, noticed that appellant's speech was slurred, that appellant's eyes were red, and that there was a strong odor of alcoholic beverage coming from appellant. Finally, like the driver in State v. Homan, appellant admitted to the trooper that he had been drinking alcoholic beverages. In fact, appellant made an even greater admission that he had been drinking "too much". The Supreme Court of Ohio concluded in State v. Homan that the totality of the facts and circumstances in that case supported the trooper's decision to place the driver under arrest. Id. at 427. Since the facts and circumstances in this case are virtually identical to those noted in State v. Homan, id., we conclude that the totality of the facts and circumstances likewise supported the decision of the trooper in this case to place appellant under arrest for DUI. Therefore, appellant's second assignment of error is well-taken to the extent that the trial court should have suppressed the results of the HGN test. However, we find that any error committed by the trial court in this regard was harmless, and that the trial court's judgment of conviction and sentencing of appellant for a violation of R.C. 4511.19(A)(3) stands.
After carefully considering the arguments and reviewing the record on appeal, we conclude that appellant was not prejudiced or prevented from having a fair trial. Therefore, the judgment of the Erie County Court is affirmed. Appellant is ordered to pay the court costs of this appeal.
State v. Gigliotti, E-00-081
 ____________________________ George M. Glasser, J.
 Richard W. Knepper, P.J., Mark L. Pietrykowski, J. JUDGES CONCUR.
Judge George M. Glasser, retired, sitting by assignment of the Chief Justice of the Supreme Court of Ohio.