OPINION
{¶ 1} This matter comes before the court on the city of Cincinnati's Crim.R. 12(K) appeal from the granting of a motion to suppress the results of a urinalysis taken incident to defendant-appellee Douglas Monaghan's arrest for driving under the influence alcohol and driving with a prohibited concentration of alcohol in his urine. The trial court granted the motion, ruling that the state had not established that the testing procedure complied with the Ohio Department of Health's regulations governing such tests, as prescribed by statute and the Ohio Administrative Code. While this ruling may appear to some to be a triumph of "form over substance," we agree with the trial court's reasoning.
 {¶ 2} The state raises two assignments of error for consideration, which we address in reverse order. First, we must decide whether the trial court erred by overruling the state's motion to reopen its case to present evidence of compliance with the Department of Health's regulations and to cure what Monaghan argued were fatal omissions in the case.
 {¶ 3} Both parties agree that a trial court has discretion to reopen proceedings for further testimony, and the court's action in that regard will not be reversed unless, under the circumstances, it amounted to an abuse of discretion.[1]
The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude was unreasonable, arbitrary, or unconscionable.[2]
 {¶ 4} Three hearings were held on the motion to suppress. At the first hearing, the parties presented all the evidence. Robert Topmiller, a forensic toxicologist at the Hamilton County Coroner's office, testified on behalf of the state. He was then cross-examined by Monaghan, and shortly thereafter, he was called on direct examination by Monaghan as a rebuttal witness. After this testimony, the prosecutor conferred with Topmiller and chose not to re-examine him. Ample opportunity existed at that time to recall the witness to cure any perceived technical defect in the record as it related to compliance with the requirements of the regulations.
 {¶ 5} At the second hearing, held about six weeks after the evidentiary hearing, the parties made closing arguments. The state orally moved to reopen and filed a written motion to reopen a week later.
 {¶ 6} At the third hearing, yet another three weeks later than the second, the prosecution did not even address the issue of reopening its case, despite being clearly on notice of the defects being argued by Monaghan. The trial court did not abuse its discretion when it proceeded then to announce its decision, having given both parties more than sufficient opportunity to present their respective cases.
 {¶ 7} The state cites State v. Smith[3] and State v.Salaam[4] as authorities to support reopening and argues that Monaghan's motion to suppress was "shotgun-style," allowing for a more general defense to it. But in fact, the exact opposite was true. Monaghan's motion was precise and provided the state with a virtual "script" for the presentation of its case. The state declined to follow the "script" with fatal results. TheSmith and Salaam courts recognized the trial court's discretion in this area, and under the facts of this case, we cannot say that the trial court abused this discretion. Accordingly, the second assignment of error is overruled.
 {¶ 8} The first assignment of error is more difficult since it concerns a crucial element of the state's case and involves distinctly technical issues. Should the state be able to use the results of the urinalysis, even though compliance with several requirements of the regulations — specifically those contained in Ohio Adm. Code 37015-3-06 — was not proved in court? Relatedly, was the testimony of the toxicologist sufficient to justify a finding of substantial compliance?
 {¶ 9} The state argues, and this court agrees, that it is the reliability of the test that is paramount if the results are to be admissible against an accused. But the state further argues that if the deviation from the regulations did not affect the reliability of the test results, the state substantially complied with the Department of Health regulations,[5] and that substantial compliance can be determined by asking whether the alleged deviation prejudiced Monaghan.[6] The flaw in this argument is that every positive test result prejudices the defendant in that it is then used as evidence in the case against him!
 {¶ 10} An additional flaw, as discussed by the Ohio Supreme Court in State v. Burnside,[7] is that judicial officers do not have the authority or scientific background to second-guess the regulations promulgated by the director of health. The General Assembly has instructed the director of health to determine "techniques or methods for chemically analyzing a person's blood, urine, breath or other bodily substance in order to ascertain the amount of alcohol, a drug of abuse, or alcohol and a drug of abuse in the person's blood, urine, breath or other bodily substance," and to "ascertain the qualifications of individuals to conduct such analyses."[8]
These same requirements are referenced in the statute under which Monaghan was charged: R.C. 4511.19, which proscribes driving while intoxicated, provides in subsection (D)(1) that "the bodily substance withdrawn shall be analyzed in accordance withmethods approved by the director of health by an individual possessing a valid permit issued by the director of pursuant to section 3701.143 of the Revised Code." (Emphasis added.)
 {¶ 11} The applicable regulations are found in Ohio Adm. Code 3701-53. The director has issued in detail the approved method of analysis in Ohio Adm. Code 3701-53-03, which is not at issue in this case. Relevant to the determination of admissibility in this case is the virtual absence from the record of testimony regarding compliance with one entire section of Ohio Adm. Code 3701-53 — that being Ohio Adm. Code 3701-53-06, a rather tedious and technical listing of "[l]aboratory requirements."
 {¶ 12} Because the record is silent as to the laboratory's compliance under this section with regard to Ohio Adm. Code3701-53-06(D)(2), (D)(3) and (D)(5), and because Monaghan specifically challenged the results on this basis in his motion to suppress, the test results had to be suppressed. It was not enough, as the state suggests, that the lab was subject to periodic review by the Department of Health. It is axiomatic that the Department of Health would not consider noncompliance with three subsections of the Administrative Code to be de minimis, as the state argues.
 {¶ 13} It is an interesting aside — however irrelevant in deciding the case sub judice — that several states do not accept urinalysis in evidence as a blood-alcohol indicator.[9]
Indeed, in this case, it was only employed when the officer realized that the police department's intoxilyzer was not functioning properly. This set of circumstances highlighted the necessity of complying with the governing regulations to insure the admissibility of the sample the state sought to use.
 {¶ 14} The trial court was correct when it found both probable cause to stop Monaghan and probable cause to arrest. It was equally correct when it did not find substantial compliance by the state with Ohio Adm. Code 3701-53-06 and consequently suppressed the results of the chemical test performed on Monaghan.
 {¶ 15} Thus, the first assignment of error is overruled, and the judgment of the trial court is affirmed.
Judgment affirmed.
Gorman, P.J., and Sundermann, J., concur.
[1] See Columbus v. Grant (1981), 1 Ohio App.3d 96, 97,439 N.E.2d 907.
[2] See State v. Salaam, 1st Dist. No. C-020324, 2003-Ohio-1021, at ¶ 14.
[3] (Mar. 28, 1990), 1st Dist. No. C-890073.
[4] 1st Dist. No. C-020324, 2003-Ohio-1021.
[5] Citing State v. Gray (1980), 4 Ohio App.3d 47,446 N.E.2d 469.
[6] Citing State v. Zuzaga, 141 Ohio App.3d 696,2001-Ohio-3189, 753 N.E.2d 229.
[7] 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71.
[8] R.C. 3701.143.
[9] See, e.g., Wash.Ann. Code 448-14-010 ("Analysis of urine for estimation of blood alcohol concentrations is not approved by the state toxicologist in the state of Washington."); see also, Alaska Stat. 28.35.030, Nev.Rev.Stat. 484.379.