THE STATE OF OHIO, APPELLEE, *v.* MIRACLE, APPELLANT.

[Cite as State v. Miracle (1973), 33 Ohio App. 2d 289.]

(No. 10-72-6—Decided April 4, 1973.)

*Messrs. Stroebel & Wilson* and *Mr. Gregory D. Wilson,* of counsel, for appellant.

*Mr. James Myers,* city solicitor, for appellee.

COLE, J. This is a case involving a charge of driving while intoxicated under the ordinances of the city of Celina, Ohio. The pertinent section reads as follows:

"333.01 Driving Or Physical Control While Under The Influence.

"(a) No person who is under the influence of alcohol, narcotic drugs or opiates shall operate any vehicle within the Municipality. (ORC 4511.19)

"(b) No person who is under the influence of alcohol, narcotic drugs or opiates shall be in actual physical control of any vehicle within the Municipality."

The actual charge simply stated "DWI" at a specified time and place without specifying the alleged influencing substance and no objection to the affidavit in this form was made. No bill of particulars was asked or tendered, and the case went to trial on the affidavit in this very generalized format. The defendant pled not guilty and a trial was had. He was found guilty and was sentenced. From this judgment of sentence and conviction, he now appeals to this court.

Quite generally, the evidence indicated that the defendant, the appellant herein, came to the attention of the city police of Celina because he was the driver of one of three automobiles involved in a collision at about 3:21 p. m. on May 26, 1972, on a certain street in the city of Celina. Thereafter, the defendant, on the invitation of the police, went to the station where a breathalyzer test was administered, at 4:43 p. m., which resulted in a reading which appears variously as .3-½% or .13-½%. There was no medical interpretation of this result presented by the prosecution. The defendant, however, presented evidence in his own behalf that he had on that day been given a dose of phenobarbital by hypodermic injection by a physician for a migraine headache sometime in the afternoon of the 26th, but the exact time was not established.

I. Much of the defendant's brief is devoted to the question of the use and admissibility of the breathalyzer test results. The use of such evidence has evolved over a period of time and we will review this development, generally, as a basis for a more particular consideration later, of the specific assignment of errors.

The fundamental question involved, of course, is whether the accused was "under the influence of" the alcohol, opiate or drug. This is a matter of indirect proof only since it involves the organic state of the defendant and prior to the advent of scientific testing procedures was predicated upon inferences from overt behavior (unsteady gait, uncoordinated movement, drinking); incoherent speech; appearance (flushed face, bloodshot eyes) or attendant alcoholic odors. The use of such evidence was not predicated upon scientific proof but was based upon the general knowledge that these items were the physical concomitants of intoxication and tended to establish that a particular defendant was at a certain time and place under the influence of alcohol or perhaps drugs.

Then came the breathalyzer and the other testing procedures which established a certain level of alcohol in the blood and, through expert opinion evidence, the ultimate issue of being under the influence. The end result of a breathalyzer test is an index number indicating only a quantum of alcohol in the blood. Hence, the evidence as to the test itself and to the resulting index number is meaningless in the absence of some major premise established by expert opinion testimony connecting the index number with the ultimate question of being under the influence. Therefore, at this stage in the development of proof, the prosecution had to establish certain prerequisites to the validity of the testing procedure.

"Before the results of a Breathalyzer test given an accused are admissible in evidence against him, it is incumbent on the state to show that the instrument was in proper working order and that its manipulator had the qualifications to conduct the test." *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140, paragraph 6 of the syllabus.

Also, some medical testimony to establish the nexus between the index number established by the testing procedures and the ultimate physical condition of the particular defendant was required. *Mentor* v. *Giordano, supra. Parton* v. *Weilnau,* 169 Ohio St. 145.

For the purpose of classifying the stages in the development of evidence in such cases, we could call this the common law breathalyzer requirements judicially developed. They are in summary:

1. That the state show the testing device was in proper working order;

2. That the operator of the device was qualified and

3. That by proper expert (and usually medical) testimony, the connection was established between the index number produced by the test and the physical state of the defendant.

Subsequent, however, to this common law development, the whole procedure became the subject of legislative action and R. C. 4511.19 was passed in 1968 which set forth certain statutory presumptions as to the physical state of a defendant when affirmative evidence as to a test result had been produced. Thus, the requirement of expert testimony was replaced by the statutory presumptions. In *State* v. *Myers,* 26 Ohio St. 2d 190, 198, it is said:

"In so providing, the General Assembly has expressed its conviction that the relationship between the objective determination by chemical test of the percentage of alcohol by weight in the blood (.15% or more), and its effect on people, is so well scientifically established that it need not be demonstrated by evidence, and may take the place of evidence at trial. The purpose of the presumption is to eliminate the need for expert testimony which would otherwise be necessary to relate the numerical figure representing a percentage of alcohol by weight in the blood as shown by the result of a chemical test, with the common understanding of being under the influence of alcohol. * * * When the test results are in evidence, the evidence that the presumption supplies is the correlation between a scientific fact, the results of the test, and human behavior;

that is, that all persons who test .15% or more are under the influence of alcohol."

Thus, where the test index is over the statutory test figure, the statutory presumption of R. C. 4511.19 operates, and at least as a matter of the prosecution's prima facie case, replaced expert testimony as to its significance by a rebuttable presumption. It will be noted that the statute was amended on December 3, 1971, to set the test figure invoking the presumption that an accused is under the influence of alcohol to .10% or more by weight of alcohol in the defendant's blood, and this latter statute was in effect at the time of the events of this case.

The *Myers* case, *supra*, stands specifically for the proposition that the rebuttable presumption does not disappear simply because other physical evidence as to the behavior, appearance or conduct of the accused leading to an inference of intoxication under the older procedures is introduced by the prosecution.

The question is then raised as to whether the legislative mode of procedure has eliminated or completely superseded the judicially developed mode of procedure in the use of breathalyzer tests. This issue, however, we need not here decide for the judicial mode specifically requires medical or expert testimony as to the significance of the test, and here the prosecution made no attempt at all to introduce such medical testimony. It, therefore, proceeded solely under the legislative mode seeking to eliminate the need for expert testimony by invoking the statutory presumption.

But to do this, the prosecution was bound to comply with the specific statutory prerequisites to the use of the presumption as well as the somewhat broader prerequisites set forth in the *Mentor* case, *supra*. The prerequisites for the use of the statutory presumptions appear specifically in the statute itself (R. C. 4511.19).

1. The specimen subject of the test must be "withdrawn within two hours of the time of such alleged violation."

2. Where the subject consents to a *blood* test (as dis-

tinguished from a urine or breath test) "only a physician or a registered nurse shall withdraw blood for the purpose of determining the alcoholic content therein."

3. The substance of the specimen "shall be analysed in accordance with methods approved by the director of health," and

4. The analysis shall be made by "an individual possessing a valid permit issued by the director of health pursuant to Section 3701.143 of the Revised Code."

When these specific requirements have been established, the court may "in any criminal prosecution for a violation of this section (R. C. 4511.19), or ordinance of any municipality relating to driving a vehicle while under the influence of alcohol" admit evidence as to the concentration of alcohol in the defendant's blood at the time of the violation. Stating this conversely, unless such requirements are met, the test results are inadmissible, and in the absence of such test results in evidence there is no presumption and the jury should not be charged as to the presumption of R. C. 4511.19. See also *State* v. *Sickles,* 25 Ohio App. 2d 1. The older and broader requirements of the *Mentor* case appear to be absorbed in these more specific requirements where statutory presumptions are invoked.

The requirement of the *Mentor* case that the device be in proper working order is absorbed in the requirement of compliance with the methods approved by the director of health, for we must assume his methods would require the apparatus to be in proper working order.

The requirement of the *Mentor* case that the operator of the testing device be qualified is absorbed in the requirement for the certification of the operator.

Therefore, we would conclude that the requirements of the statute are the necessary prerequisites for the use of the test results and the presumptions, and that the older judicial conditions are absorbed in them.

II. Having thus summarized the basic rules pertaining to the proof of "being under the influence of alcohol," we now turn to the specific errors assigned in the present case related to this subject.

Assignment of Error No. 2 reads as follows:

"The trial court erred in refusing to grant defendant's motion to exclude the breathalyzer test results from evidence on the basis that the City of Celina did not prove that the conditions for admitting the breathalyzer test as evidence had been met as required by 4511.19 of the Ohio Revised Code."

Assignment of Error No. 4 reads as follows:

"The trial court erred in that the court instructed the jury about the presumption of law which arises if the concentration of alcohol in the blood exceeds ten hundredths of one percent, and there was absolutely no evidence presented on the concentration of alcohol in the blood."

We will consider these assignments of error together as they constitute, generally, an invocation of the rules we have heretofore discussed. Since the prosecution had no medical evidence, it necessarily relied upon the statutory presumption. The record reveals that the test was performed within two hours of the alleged offense; that no blood test was given and, hence, neither a nurse nor a physician was required; that the police officer who administered the test was properly certified and there was general testimony from which it could be inferred the breathalyzer machine was in proper working order and that some logical sequence was followed in administering the test. However, there is no testimony at all as to the methods approved by the director of health, testimony as to specific compliance with these methods, or even a general statement by the officer that these methods, as approved by the director of health, were followed.

This requirement is a specific statutory prerequisite to an introduction of the test results if the presumption is to be invoked. Here, the evidence failed to meet the statutory requirements and there was no medical testimony to meet the requirements of the preexisting judicial method with its somewhat less rigid prerequisites to admission. Thus, we conclude that it was error to permit the test results, over objection, to be admitted into evidence. It was also error for the court to charge upon the presumption,

over objection, when the necessary statutory condition prerequisite to the admission in evidence of the test results had not been met.

We note a further subsidiary objection that the test results were never properly stated as a percent of alcohol by weight. The only reference to the actual test result is stated to be "Point three and a half percent" which counsel apparently agree is an error and should read "Point one three and a half percent." However, this may be inferred to be by weight from previous testimony.

III. Having concluded that there was error committed by the court, for the reasons stated, the question arises as to whether this error was prejudicial to the defendant. The prosecution claims that the test results were only incidental to the basic proof that defendant was under the influence, which was proven by the traditional method of inferring from behavior, conduct, speech and appearance and, that this proof was adequate to convict even if the test results were disregarded; hence, there was no prejudice to the accused.

With this we do not agree. The weight given by the mind to objective scientific testing is necessarily great. Such evidence eliminates the personal and possible errors of judgment of eye witness testimony to behavior. It appears to have a complete independence from the usual frailties and mistakes of observation and substitute therefor the completely impartial action of scientific testing. We feel this aura of infallibility which is commonly attributed to scientific testing makes it subject to prejudicial abuse.

In this case, the evidence as to conduct, speech, appearance, etc., was disputed and the defendant by his physician introduced evidence to explain away the possible inference as to alcoholic intoxication. There was, therefore, conflict in this area and, hence, the scientific evidence could have been used by the jury to resolve this conflict against the defendant.

In a memorandum decision in the case of *State* v. *Carroll*, Auglaize County No. 236 (1970), this court said:

"There is much authority for the proposition that error

in admitting evidence is harmless where the fact intended to be proved thereby is *fully* shown by other evidence which is competent, which is admitted without objection, or which is adduced by the accused. 24B C. J. S. 67, Criminal Law, Sec. 1915(5). The Supreme Court of Ohio has so held, *State* v. *Morello,* 169 Ohio St. 213, another Ohio Court of Appeals has so held, *State* v. *Myers,* 82 O. L. A. 216, 164 N. E. 2d 585, and this court has so held in an unreported case decided without opinion, *State* v. *Roth,* Hancock County Court of Appeals Case No. 629. Although such authority does not indicate that the other evidence be such as to require a court to find the existence of the fact thus proved as a matter of law, the cases would appear to support the proposition that such other evidence must be substantially uncontradicted or not susceptible of a reasonable explanation to the contrary. See *Pruitt* v. *State,* Tenn. Sup. Ct., 393 S. W. 2d 747.''

The lack of contradiction or lack of reasonable explanation does not here exist. Here, the defendant introduced evidence showing a possible explanation in the form of a migraine headache and its treatment by a physician to explain his behavior, speech and appearance. There was also the testimony of the police officer that he was not sure the defendant was intoxicated and therefore asked for the breathalyzer test. Also, not all of defendant's conduct and appearance was indicative of intoxication, or subject to such an inference in considering the cause of his behavior. The collision itself and the attendant emotional stress could account for some of the indicia that was offered as proof of the influence of alcohol. Hence, we cannot say that the jury in the absence of the breathalyzer test would necessarily have convicted the defendant.

It, therefore, ''affirmatively appears on the record that the accused * * * may have been prejudiced'' by the ''admission * * * of ** * * evidence offered against him'' as prescribed by R. C. 2945.83, and such prejudice is justification for a reversal of the judgment and the granting of a new trial.

However, the prosecution further argues that there is

ample evidence introduced by the defendant to show that he was under the influence of phenobarbital, a drug, and the jury could have convicted on this testimony rather than upon evidence that his behavior was caused by alcohol.

We note, however, that in the court's charge, in outlining to the jury the specific facts to be proved, it limited the issue to whether defendant was "under the influence of alcohol" and the question as to whether the defendant was under the influence of a drug of abuse was never properly developed in testimony or presented to the jury.

IV. There are other specific assignments of error, and, though we believe the foregoing analysis and conclusions are dispositive of the case, nevertheless, pursuant to Appellate Rule 12A, we now proceed to a brief consideration of these other assigned errors.

a. In his first assignment, the defendant charges the trial court erred in refusing defendant the right to solicit testimony about the automobile accident preceding the arrest. This accident was only pertinent to establish that which called the attention of the police to the defendant and the necessary element that one charged under R. C. 4511.19 be operating a motor vehicle. The court properly limited the scope of cross-examination to these areas.

b. In his third assignment of error, the defendant charges that the trial court committed error in denying a motion to strike the breathalyzer test on the basis that the defendant was not under arrest at the time the test was administered. The basic action was erroneous as the breathalyzer test should have been excluded. However, it appears from the testimony that the defendant voluntarily went to the police station and there took the test. The assigned ground is therefore not sufficient.

c. In his fifth assignment of error, the defendant charges the court erred in allowing certain opinion testimony to be admitted. The defense had called a Dr. Kile to testify as to the question of his administering phenobarbital to the defendant on the day in question. The prosecution asked on cross-examination whether phenobarbital would affect the breathalyzer test. The doctor had been qualified as an ex-

pert in medicine. The question was one involving a medical problem and was not per se objectionable. The doctor indicated he did not know but hazarded a guess it would not. There was no motion to strike the answer. The assignment of error was not well taken.

d. In his sixth assignment of error, the defendant charges that the trial court erred in allowing the prosecution to cover areas in cross-examination that had not been covered in direct testimony. The scope of cross-examination is not limited to the areas developed on direct examination, but may be broadened to cover issues pertinent to the case. In *Smith* v. *State*, 125 Ohio St. 137, the following is stated, in paragraph one of the syllabus:

"A witness in a criminal case or a party may be properly cross-examined as to all relevant facts developed by the examination in chief and as to such other relevant facts as the party calling such witness could have inquired in order to make out his case. * * * "

If an injection of phenobarbital would seriously affect a breathalyzer test and render its results useless as a measure of the alcoholic content of the blood, this fact would be highly pertinent to the defendant's case. Here, the converse is brought out on cross-examination. It was a matter potentially within the scope of direct examination and, hence, of cross-examination. We find no error.

We conclude that the defendant's second and fourth assignments of error and, in part, the third are well taken in that an insufficient foundation was laid for the admission into evidence of the results of the breathalyzer test and the court erred in both admitting the test results and in charging on the presumption under the statute (R. C. 4511.19). The judgment of the trial court is, therefore, reversed and the cause is remanded for a new trial.

*Judgment reversed.*

GUERNSEY, P. J., and MILLER, J., concur.