CITY OF TOLEDO, APPELLEE, *v.*
RAIDER, APPELLANT.

(No. L-82-350—Decided
March 18, 1983.)

*Mr. William F. Hayes,* for appellant.

*Mr. Michael Beasley,* for appellee.

HANDWORK, J. This case is before the court on appeal from a judgment of the Toledo Municipal Court. A jury found defendant-appellant, Michael L. Raider, guilty of having violated Section 333.01 of the Toledo Municipal Code (driving while under the influence [DWI]). The trial court thereafter sentenced appellant to a term of imprisonment and imposed a fine. This appeal followed.

On April 3, 1982, appellant ran a stop sign at the corner of Ash and Erie Streets in Toledo. Two police officers stopped appellant and requested his identification. The record indicates that appellant had difficulty producing his driver's license. He was then asked to exit his car, and, in attempting to do so, he stumbled and fell. Appellant appeared "dazed" and was not responsive to the officer's questions. Each officer testified that he detected an alcoholic odor on appellant's person. Several empty beer bottles appeared in plain view on the car's floor. No field sobriety tests were given.

Appellant was subsequently transported to the Lucas County jail. At the jail, he was taken to the "intoxilyzer room," where Deputy Sheriff Collins advised appellant of his rights regarding the intoxilyzer test. Appellant voluntarily took the intoxilyzer test. The intoxilyzer "print out" card disclosed a reading of ".231." In his testimony, Collins did not articulate what, if any, meaning was ascribable to this test result. At the close of the prosecution's case-in-chief, the court, over objection, admitted evidence of appellant's intoxilyzer test. Appellant rested without calling any witnesses or taking the witness stand. Closing arguments were waived. The trial court, over timely objection, instructed the jury on the statutory presumption set forth in Section 333.01(C)(2) of the Toledo Municipal Code. This section is identical to R.C. 4511.19(B). The jury subsequently re-

turned a verdict finding appellant guilty of "driving while under the influence of *intoxicants*."[1]

In this appeal, appellant presents three assignments of error, the second of which is as follows:

"The court erred in admitting evidence of an intoxilyzer test given to the defendant where there had been no showing that the defendant had been validly placed under arrest prior to the giving of the intoxilyzer test."

Appellant contends that he was not formally arrested by Toledo police officers. We find no merit in this contention. In *State* v. *Noe* (Sept. 3, 1982), Fulton App. No. F-82-3, unreported, this court held, in the first paragraph of the syllabus therein:

" 'Arrest' is a term of art. An arrest is effected when there is exhibited (1) an intent to arrest, (2) under a real or pretended authority, (3) followed by an actual or constructive seizure of the person, and (4) which is so understood by the person being seized. No magic words, in themselves, suffice to establish the fact of arrest."

We find sufficient evidence in the record *sub judice* from which to conclude that appellant was indeed arrested by Toledo police officers. See, also, *State* v. *Darrah* (1980), 64 Ohio St. 2d 22, 26 [18 O.O.3d 193]; *State* v. *Barker* (1978), 53 Ohio St. 2d 135, 139 [7 O.O.3d 213]. Consequently, appellant's second assignment of error is not well-taken.

Appellant's first and third assignments of error are as follows:

"The trial court admitted [*sic*] prejudicial error in admitting evidence of the breathalyzer test administered to the defendant and erred in granting an instruction to the prosecution explaining the meaning and presumptions granted pursuant to Ohio Revised Code Section 4511.19.

"The decision of the jury was against the manifest weight of the evidence."

In support of his first assignment of error, appellant argues that because no testimony was elicited indicating the meaning of appellant's intoxilyzer test result, and because such testimony was a necessary foundational element for its admission, the trial court erred both in admitting the evidence of the test result and in instructing the jury on the statutory presumption.

Testimony relevant to the disposition of appellant's first and third assignments of error is as follows:

"[Prosecutor:] Q. What did you do next?

"[Deputy Collins:] A. Then I took the air pump, I told the man to take a deep breath, breathe into the tube, breathe until I hear it click. At that click it would be completed. Then I get a readout. That subject, completed.

"Q. What was the readout?

"A. .231.

"* * *

"Q. .231, what does that mean in the—

"A. Well, a .1— [objection by defense counsel]

"Q. Could you just describe what the .231 reading — what that measures?

"* * *

"A. I really don't know that. You would have to ask the Senior Operator."

In *State* v. *Miracle* (1973), 33 Ohio App. 2d 289 [62 O.O.2d 440], the Court of Appeals for Mercer County encountered a similar problem in the foundational testimony of the officer who ad-

---

[1] We find that appellant's point is well-taken regarding the inconsistency between the jury's verdict and both the offense described in the statute and the court's instruction of law. There is no such offense as driving while under the influence of "intoxicants." However, in light of the basis for reversal articulated herein, we find it unnecessary to reach appellant's discussion of this aspect of the case.

ministered a breathalyzer test, stating at page 296:

"We note a further subsidiary objection that the test results were never properly stated as a percentage of alcohol by weight. The only reference to the actual test result is stated to be 'Point three and a half percent' which counsel apparently agree is an error and should read 'Point one three and a half percent.' *However, this may be inferred to be by weight from previous testimony.*" (Emphasis added.)

Section 333.01(C)(2), which is identical to R.C. 4511.19(B), states as follows:

"If there was at that time a concentration of ten hundredths of one percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of alcohol."

The Ohio Supreme Court has indicated that at least *some* evidence is necessary to explain what a given reading or result of a test for intoxication indicates. See *Mentor* v. *Giordano* (1967), 9 Ohio St. 2d 140, 146. In *State* v. *Drennan* (Feb. 7, 1975), Lucas App. No. 7783, unreported, this court held, in part:

"[B]efore such instructions [on the statutory presumption] may be given, a qualified operator who testifies as to the test results, even though he has a valid permit, * * * *must be able to explain what the reading on the breathalyzer indicates*[.]" (Citations omitted.) (Emphasis added.)

The statutory presumption contained in both the Toledo Municipal Code and the Ohio Revised Code is based upon a traceable percentage of alcohol in the blood *by weight.* In the instant case, Deputy Collins testified only to a certain percentage (".231"), without further supplementing the meaning of that particular measurement. The deputy did not testify to a percentage of alcohol in terms of weight or anything else. In fact, by his own statements, he did not know what the reading meant. Nor was a foundation laid in his previous or subsequent testimony from which a reasonable inference might be drawn that the intoxilyzer reading of .231 measured appellant's blood-alcohol content by the statutory requirement of weight. Without such foundational testimony, the jury was left to speculate on the meaning of ".231."[2] In this regard, we observe that other jurisdictions similarly require, as part of the prosecution's foundational testimony, stringent adherence to the precise units of measurement contained in their DWI statutes. See *State* v. *Corsiglia* (Mo. App. 1968), 435 S.W.2d 430; *State* v. *Thornton* (Mo. App. 1969), 441 S.W.2d 738; cf. *State* v. *Rodell* (1962), 17 Wis. 2d 451, 117 N.W. 2d 278.

Thus, in addition to other foundational proof, we hold that the prosecution must elicit testimony indicating what the intoxilyzer test result means. For example, a result of ".231" would mean that the person who was tested had a blood-alcohol concentration of twenty-three hundredths of one percent by weight. Testimony to this effect, by Collins or any senior operator, would have been a sufficient foundation for admitting the test result of ".231," assuming, of course, that the concomitant foundational prerequisites were established for other aspects of the intoxilyzer test.

Having determined that an insufficient foundation was laid for the admis-

---

[2] The precise meaning of an intoxilyzer test result is crucial because there is a significant scientific difference between measuring blood-alcohol content *by weight,* as opposed to another unit of measurement, such as *by volume.* For example, one milligram unit of weight equals one milliliter unit (or cubic centimeter) of volume.

sion of the test result herein, we conclude that the trial court erred in admitting such evidence. Cf. *State* v. *Miracle, supra,* at 295. Furthermore, because that evidence was inadmissible, the statutory presumption did not arise. The trial court, therefore, erred in instructing the jury on the presumption contained in section 333.01(C)(2). Appellant's first assignment of error is well-taken. Because of the disposition of the first assignment of error, appellant's third assignment of error is now moot and, for that reason, it is not well-taken.

On consideration whereof, the judgment of the Toledo Municipal Court is hereby reversed. This case is remanded to said court for further proceedings not inconsistent with this opinion.

*Judgment reversed.*

CONNORS, P.J., concurs.

DOUGLAS, J., dissents.