THE STATE OF OHIO, APPELLEE, *v.* CAUDILL, APPELLANT.

(No. CA83-01-001—Decided September 30, 1983.)

*Mr. John F. Holcomb,* prosecuting attorney, *Mr. Daniel G. Eichel* and *Mr. Michael J. Sage,* for appellee.

*Messrs. Holbrock, Jonson, Bressler & Houser, Mr. Hugh D. Holbrock, Mr.*

*Michael D. Shanks* and *Mr. Tim Evans,* for appellant.

JONES, J. On the evening of April 9, 1982, defendant-appellant, Michael Caudill, was at the Dixie Electric Company, a bar located in Fairfield, Ohio. Appellant left the bar a little after 12:00 a.m. and proceeded to drive around the Fairfield area in a seemingly irregular and uncoordinated pattern, stopping several times and making various U-turns.

At approximately 12:40 a.m., on April 10, 1982 appellant was driving north on Pleasant Avenue just south of Wessel Drive. Christy Puska was driving south on Pleasant Avenue in the lefthand lane when appellant's car crossed the center line. In order to avoid a collision, Puska pulled her car into the curb lane but appellant's vehicle continued to move across the southbound lanes of Pleasant Avenue towards the Puska vehicle. Puska "yanked" her car off the road onto the berm and grass adjacent to Pleasant Avenue as appellant's vehicle sped past at a high rate of speed. Marta Hollinger, a passenger sitting in the rear seat of the Puska vehicle, turned and saw appellant's car crash head-on into an automobile which was traveling south in the curb lane of Pleasant Avenue.

Police and rescue units quickly responded to the accident. Seventeen-year-old Delores Bates, the driver of the southbound auto, was pronounced dead at the scene. Donna Williams, age nineteen, a passenger in the Bates vehicle, died two days later at Mercy Hospital South. Both girls died as a result of injuries sustained in the accident. Appellant, unconscious from the collision, was removed from his car by life squad members who noticed a strong odor of alcohol on appellant's breath. Appellant was transported to Mercy Hospital South where, at 1:15 a.m., a lab technician removed a blood sample from appellant for purposes of conducting a blood transfusion. Under the supervision and control of Dr. Joseph Brandabur, Director of Mercy Hospital laboratories and Butler County Chief Deputy Coroner, tests were later conducted on this sample to analyze and determine appellant's blood-alcohol content. The test results revealed that appellant's blood had a concentration of .158 of one percent by weight of alcohol.

Appellant was indicted for two counts of aggravated vehicular homicide in violation of R.C. 2903.06(A), one count of driving under the influence of alcohol in violation of R.C. 4511.19, and one count of failing to drive on the right of the roadway. Appellant filed a motion to suppress and a motion *in limine.* Appellant's objective was to suppress evidence of the results of the blood-alcohol content test. The trial court denied the motions and allowed the test results to be admitted, subject to independent expert explanation, but without the corresponding statutory presumption that appellant was under the influence of alcohol.

At trial, Dr. Richard Burkhardt, the Butler County Coroner, testified, *inter alia,* that the medical effects of alcohol on the human body would result in impaired judgment, slower reflexes, and a lower inhibition level. Dr. Brandabur testified that the tests conducted on appellant showed a blood-alcohol content of .158 percent. He further testified that a person with a content reading of .158 percent would suffer from impaired muscular coordination, confusion, and disorientation.

The jury returned a guilty verdict on the two counts of aggravated vehicular homicide and the charge of driving under the influence. Appellant was sentenced to two consecutive terms of two to five years for the aggravated vehicular homicide charges and received a sixty-day sentence and a three-year license suspension for the driving under the influence charge. Appellant filed a notice of appeal, and has submitted two assignments of error for our consideration which read as follows:

### First Assignment of Error

"The trial court erred in overruling defense counsel's motion to suppress/motion *in limine* thereby admitting into evidence the blood analysis of defendant taken and analyzed in violation of applicable law and regulations."

### Second Assignment of Error

"The trial court erred in sentencing defendant upon conviction of two counts of aggravated vehicular homicide in violation of Ohio Revised Code Section 2941.25."

In his first assignment of error, appellant argues that evidence of the blood-alcohol content test should not have been admitted for any purpose. Appellant's contention is based on the proposition that the failure to withdraw and analyze the blood pursuant to statutory guidelines and requirements renders the evidence inadmissible for any purpose.

R.C. 4511.19 prohibits the operation of any vehicle by one who is under the influence of alcohol. R.C. 4511.19 further provides in part that:

"In any criminal prosecution for a violation of this section, * * * the court may admit evidence on the concentration of alcohol in the defendant's blood at the time of the alleged violation as shown by chemical analysis of the defendant's blood, urine, breath, or other bodily substance withdrawn within two hours of the time of such alleged violation. * * * Such bodily substance shall be analyzed in accordance with methods approved by the director of health by an individual possessing a valid permit issued by the director of health pursuant to section 3701.143 of the Revised Code. Such evidence gives rise to the following:

"* * *

"(B) If there was at the time a concentration of ten hundredths of one per cent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of alcohol.

"* * *"

The director of health is responsible for determining the methods for chemically analyzing a person's blood in order to ascertain the amount of alcohol present in a person's blood. R.C. 3701.143. The procedural requirements for the collection and handling of blood specimens for alcohol testing are set forth in Ohio Adm. Code 3701-53-05. There is undisputed evidence that the sample of appellant's blood was not withdrawn and handled according to these specifications.

Evidence of chemical tests which are not administered within two hours of the alleged violation is still admissible. *Barber* v. *Curry* (1974), 40 Ohio App. 2d 346 [69 O.O.2d 312]. See, also, *State* v. *Hernandez* (1978), 62 Ohio App. 2d 63 [16 O.O.3d 114]. Failure to comply with the requirements of R.C. 4511.19 does not preclude the admissibility of evidence of the tests, but merely precludes such evidence from giving rise to the presumptions set forth in R.C. 4511.19. *Barber, supra.* In the *Barber* and *Hernandez* cases the tests were not administered within the two-hour time limit of R.C. 4511.19. In the case at bar, there is no question that the sample of appellant's blood was removed within two hours of the alleged violation. Rather, appellant questions the manner and method in which the blood was removed and analyzed.

In *Aurora* v. *Kepley* (1979), 60 Ohio St. 2d 73 [14 O.O.3d 273], paragraph two of the syllabus holds that:

"Where the Director of Health, pursuant to R.C. 3701.143, promulgates a rule that a Breathalyzer test administered by one holding an operator's permit is to be performed under the general direction of a senior operator, the senior operator is not required to be physically present when the test is administered. (Ohio Adm. Code 3701-53-07[C]. )" See, also, *Aurora* v. *Patrick* (1980), 61 Ohio St. 2d 107 [15 O.O.3d 107].

While these cases are not factually on point with the case at bar, we feel that their reasoning is applicable in support of the proposition that strict compliance

with the provisions of R.C. 4511.19 and the administrative regulations established pursuant to R.C. 3701.143 will not render evidence of blood alcohol content tests inadmissible as long as the statutory presumptions do not apply.

In the case at bar, the state stipulated that it would not seek to introduce the statutory presumption relating to appellant's test results. The presumption was excluded and the record reflects that the state produced sufficient independent expert testimony on the part of the Butler County Coroner and Chief Deputy Coroner to introduce the test results as evidence for the driving under the influence charge.

Appellant was also charged with two counts of aggravated vehicular homicide. Although a blood-alcohol test is not conducted pursuant to statutory requirements, the test results are still admissible as evidence to show that an individual has violated R.C. 2903.06(A). *State* v. *Moore* (Nov. 23, 1982), Clark App. No. 1692, unreported; *State* v. *Greve* (Nov. 15, 1978), Butler App. No. CA78-02-0009, unreported; *Hernandez, supra.* Thus, the trial court committed no error in introducing the evidence of the blood test results absent the statutory presumption. For these reasons, appellant's first assignment of error is overruled.

In his second assignment of error, appellant argues that he should have been convicted and sentenced on only one count of aggravated vehicular homicide instead of two. Appellant cites R.C. 2941.25 to support his position. R.C. 2941.25 states that:

"(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

"(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them."

By enacting this statute, the General Assembly has authorized trial courts, in a single criminal proceeding, to convict and to sentence a defendant for two or more offenses, having as their genesis the same criminal conduct or transaction, provided that the offenses (1) were not allied and of a similar import, (2) were committed separately or (3) were committed with a separate animus to each offense. *State* v. *Moss* (1982), 69 Ohio St. 2d 515 [23 O.O.3d 447], certiorari denied (1983), 75 L. Ed. 2d 430. Appellant claims that the state failed to produce evidence of a separate animus for each death that resulted from his collision with the Bates automobile.

In *State* v. *Logan* (1979), 60 Ohio St. 2d 126 at 131 [14 O.O.3d 373], the Supreme Court held that:

"* * * R.C. 2941.25(B), by its use of the term 'animus,' requires us to examine the *defendant's mental state* in determining whether two or more offenses may be chiseled from the same criminal conduct. In this sense, we believe that the General Assembly intended the term 'animus' to mean *purpose* or, more properly, *immediate motive.*" (Emphasis added.)

Appellant was convicted of two counts of aggravated vehicular homicide. R.C. 2903.06(A) provides that "[n]o person, while operating * * * a motor vehicle, * * * shall recklessly cause the death of another." Thus, in the case at bar, the animus or mental state which must be considered in conjunction with the provisions of R.C. 2941.25 is that of recklessness. This mental state is defined in R.C. 2901.22(C) in the following terms:

"A person acts recklessly when, with heedless indifference to the consequences, he perversely *disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to cir-*

*cumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."* (Emphasis added.)

A person is said to be reckless under this section when he disregards a known and significant possibility that his conduct is likely to cause a certain result or be of a certain nature, or that certain circumstances are likely to exist. Something is "likely" when there is merely good reason for expectation or belief. See legislative Committee Comment to R.C. 2901.22.

Like all mental states, animus is often difficult to prove directly, but must be inferred from the surrounding circumstances. *Logan, supra.* In the case at bar, it is sufficiently clear that appellant's "purpose" or "immediate motive" was not to take the lives of anyone, let alone the two young girls. Nevertheless, it is also undeniably clear that appellant disregarded the significant possibility that his conduct and the related circumstances were likely to cause a particular consequence or that there was good reason to believe or expect a particular result, *i.e.,* a fatal automobile accident. We are convinced that appellant's course of conduct clearly demonstrates that he formed the requisite animus or reckless mental state for each individual he fatally injured despite the fact that the two deaths stem from a single vehicular accident involving only one other automobile. Such conduct is sufficient to sustain multiple convictions of aggravated vehicular homicide arising from an accident of this nature. See *Moore, supra.* Accordingly, we overrule appellant's second assignment of error.

*Judgment affirmed.*

KOEHLER, P.J., and SCHWARTZ, J., concur.

SCHWARTZ, J., of the Clermont County Court of Common Pleas, sitting by assignment in the Twelfth Appellate District.