### State v. Schell
*[Cite as 4 AOA 138]*

*Case No. CA-7884*
*Stark County, (5th)*
*Decided June 18, 1990*

*Robert D. Horowitz, Prosecuting Attorney, P. O. Box 167, D. T. Station, Canton, OH 44701, for Plaintiff-Appellant.*

*Jack A. Blakeslee, 610 United Bank Plaza, 220 Market Ave. S., Canton, OH 44702, for Defendant-Appellee.*

BAIRD, J.

This cause comes before the court upon the appeal of Laura Lynn Schell from her conviction after a jury trial in the Stark County Court of Common Pleas on charges of aggravated vehicular homicide, R.C. 2903.06, with a specification of driving under the influence of alcohol and a specification of causing physical harm pursuant to R.C. 2941.143, driving under the influence of alcohol, R.C. 4511.19(A)(1), and driving on the left side of a divided highway, R.C. 4511.35.

At approximately 1:25 a.m. on August 25, 1988, Joanne F. Toppen was killed on interstate

highway 77 when her automobile was struck head-on by an automobile operated by appellant Schell. Schell had been drinking earlier that evening at home and in two bars. Schell originally had entered the southbound lanes of interstate 77, but drove her car across the grass median dividing the northbound and southbound lanes, and emerged in the northbound lanes, heading south. Appellant drove for approximately three miles in the wrong direction before colliding with Toppen's vehicle at the crest of a hill.

At 4:44 a.m., a sample of Schell's blood was taken by hospital personnel for purposes of a blood alcohol test. The blood sample was not refrigerated, as required by Ohio Adm. Code 3701-53-05(F), until it was delivered to the crime laboratory at approximately 9:42 a.m.

Schell does not appeal her conviction for aggravated vehicular homicide, nor the sentence of an indefinite term of two-to-five years in prison, pursuant to then-effective provisions of R.C. 2903.06(B), R.C. 2929.11(B)(7), and R.C. 2941.143.[1] Rather, her appeal is limited to challenging the evidence of the element of driving under the influence of alcohol under R.C. 2903.06, which resulted in permanent revocation of driving privileges, R.C. 2903.06(B), and ineligibility for shock probation, probation, or shock parole, R.C. 2903.06(C).

### ASSIGNMENT OF ERROR I

"The trial court committed prejudicial error when it failed to suppress the results of the blood alcohol test."

Appellant argues that the results of the blood alcohol test should have been suppressed because the test did not conform to the requirement of R.C. 4511.19(B) that the blood be taken within two hours of the alleged violation, nor the requirement of Ohio Adm. Code 3701-53-05(F) that all such blood samples be refrigerated while not in transit.

The issue raised in this assignment of error has been addressed repeatedly by Ohio courts. It is clear that less than strict compliance with the testing requirements of R.C. 4511.19 and Ohio Adm. Code 3701-53-05 does not render the results of a blood alcohol test inadmissible, unless statutory presumptions of being under the influence of alcohol apply. *State* v. *Caudill* (1983), 11 Ohio App. 3d 252, 254-55; *State* v. *Davis* (1983), 13 Ohio App. 3d 265, 267. Though R.C. 2903.06(B) establishes a presumption that one was under the influence of alcohol depending on the results of breath, urine, or blood alcohol tests, such a presumption played no part in the case *sub judice.*

Because the jury was not instructed regarding such a presumption, there was no prejudice to the appellant by admission of the test results. *State* v. *Davis, supra* at 267.

When determining whether a defendant was driving under the influence of alcohol under R.C. 2903.06 other than pursuant to the presumption provided for in that statute, the same principle applies as for one charged under R.C. 4511.19 (A)(1), which proscribes driving under the influence of alcohol without regard to the amount of alcohol in the body:

"the failure to extract a blood sample within two hours of the alleged violation does not in itself render the test results inadmissible. See *Newark* v. *Lucas* (1988), 40 Ohio St. 3d 100, paragraph two of the syllabus. It is the condition and behavior of the defendant before, during, and after the violation that is of primary evidentiary value, rather than the numerical percentage of alcohol in the body. *Id.* at 104. There was ample evidence presented at trial of appellant having been under the influence of alcohol: her own admission at the hospital that she had been drinking that evening, eyewitness accounts of her reckless driving before the collision, accounts of her hostile and uncooperative behavior toward emergency personnel after the collision, and observations and opinion testimony regarding her general behavior and physical condition, all of which was consistent with appellant having been under the influence of alcohol. In this context, the test results are properly considered in addition to all other evidence of impaired driving." *Id.*

Absent a showing of prejudice to the defendant, substantial compliance with the requirements of Ohio Adm. Code 3701-53-05 is sufficient for admissibility of alcohol test results. *State* v. *Plummer* (1986), 22 Ohio St. 3d 292, syllabus. A failure to refrigerate a blood sample for five hours is well within the range of substantial compliance. See *Id.* at 294-95. Further, appellant has failed to show any prejudice from the lack of refrigeration of the blood sample for five hours. It has been observed that such delay actually benefits a defendant, as refrigeration retards the evaporation of alcohol. *Id.* at 295, footnote 2; *State* v. *McKinnon* (1987), 38 Ohio App. 3d 28, 30.

Appellant's first assignment of error is overruled.

### ASSIGNMENT OF ERROR II

"The trial court committed prejudicial error by admitting the result of the blood alcohol test

without testimony indicating or explaining what the result meant."

Appellant argues that the laboratory analyst's failure to explain that the .21 reading on the blood alcohol test was a percentage of alcohol content in the blood by weight rendered the test results inadmissible, and cites *Toledo* v. *Raider* (1983), 14 Ohio App. 3d 198, in support. Appellant's reliance on this case is misplaced, as it involved a prosecution under a statutory presumption of intoxication.

When no statutory presumption applies, a sufficient explanation of the meaning of the test results is made when there is expert testimony regarding the effects that such an amount of alcohol has on a person's judgment, coordination, muscle control, etc. See *State* v. *Caudill, supra* at 253. As the coroner testified to these matters, a proper foundation was laid for admission of the test results. *State* v. *McKinnon, supra* at 30.

Appellant's second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

"The trial court committed prejudicial error by permitting the coroner to testify that the rate of metabolism of alcohol decreases by .015% per hour in the human body without requiring the state to lay the necessary foundation for admission of the test results."

For the reasons stated under the above assignment of error, this assignment of error is overruled.

### ASSIGNMENT OF ERROR IV

"The trial court committed prejudicial error by permitting the coroner to testify concerning the metabolic rate of alcohol in the human body and the affect [sic] of a blood alcohol test result of .21 on the human body because the coroner was not properly qualified as an expert to testify concerning these matters."

A coroner's medical training and experience qualifies him as an expert on the effects of alcohol on the human body and on one's driving abilities under the influence of alcohol. See *State* v. *Stinson* (1984), 21 Ohio App. 3d 14, 17. The record shows that the coroner in the case *sub judice* was thoroughly qualified by training, education, and experience to testify to these matters. Appellant's fourth assignment of error is overruled.

*Judgment affirmed.*

REECE, P. J., and QUILLIN, J., concur.

[1] At the time of the incident and at the time of trial in May 1989, a first violation of R.C. 2903.06 was a fourth degree felony, while a subsequent violation was a third degree felony. Effective November 3, 1989, a first offense became a third degree felony, and a subsequent offense a second degree felony. R.C. 2903.06(B).