OPINION
{¶ 1} Larry Angus, Jr., appellant, seeks review of his conviction and sentence imposed in the Franklin County Municipal Court on September 30, 2005. Appellant was charged with three counts of violating R.C. 959.131(C)(2) involving two companion animals, commonly known as pets. One charge accused appellant of negligently failing to provide proper medical care to one of the dogs. The second and third charges accused appellant of negligently depriving his two dogs of necessary sustenance resulting in the animals being between 25 and 35 percent underweight.
 {¶ 2} The prosecution dismissed the first charge and the case proceeded to trial before a jury on the two counts of depriving the dogs of necessary sustenance. The jury returned guilty verdicts on both charges. Appellant was sentenced and filed this appeal.
 {¶ 3} The state's evidence consisted of the testimony of Capital Area Humane Society ("Humane Society") Agent Jennifer Kulina and Dr. Barbara Whitlock, a veterinarian. Appellant presented the testimony of his girlfriend, a neighbor, and testified on his own behalf.
 {¶ 4} On December 12, 2004, having received a complaint that appellant's dogs were not being properly cared for, Agent Kulina went to appellant's apartment. She found two dogs, a Dalmatian mixed breed and a Rottweiler mixed breed. Both animals were emaciated. Their ribs, hipbones and spines were protruding through their skin. The dogs were in a small cage barely big enough for each dog to lie down. The cage held no food or water and was contaminated with feces and urine. The dogs had urine burns on their skin. They were in "terrible condition."
 {¶ 5} Although Agent Kulina had the authority to impound the dogs due to their emaciated condition,[1] she elected instead to require appellant to have the dogs examined by a veterinarian of his choice. Appellant was to schedule that appointment within 24 hours, advise Agent Kulina the name of the veterinarian, and have the dogs examined within five days. Appellant made an appointment but failed to appear. He rescheduled and the dogs were examined. However, when Agent Kulina contacted the veterinarian to find out if appellant had complied with her instructions, the veterinarian "stated that he did not re-schedule a follow-up appointment which was required by that vet."[2] As a result, Agent Kulina obtained a search warrant to seize the dogs.
 {¶ 6} The dogs were delivered to the Humane Society where Dr. Whitlock examined them. Dr. Whitlock found the Rottweiler weighed only 44.5 pounds, later determined to be 40 percent below its normal weight. The Dalmatian weighed only 42.3 pounds, 26 percent underweight.
 {¶ 7} Dr. Whitlock saw no symptoms that the dogs had intestinal worms.[3] However, she had been told that the dogs had received an initial treatment so she administered a second dose of the medication. Other than that, the course of treatment was simply to feed the dogs twice a day until they regained their normal weight. The dogs were fed the normal dry dog food fed to all of the dogs at the Humane Society shelter. Both dogs responded to being fed properly and regained their proper weight. The Rottweiler's weight increased from 44.5 pounds to 75 pounds while the Dalmatian's weight rose from 42.3 pounds to 57.2 pounds.
 {¶ 8} During cross-examination of Dr. Whitlock, the defense suggested that the dogs' condition could have been a result of a whipworm infection of their intestines. Dr. Whitlock testified that, in 31 years of veterinary practice, she had never seen severe weight loss from a whipworm infection. Only an illness such as late-stage cancer would cause the extent of weight loss the two dogs had suffered. Instead, in Dr. Whitlock's professional opinion, the dogs were severely underweight because they had not been adequately fed.
 {¶ 9} Appellant lived with his girlfriend, Sarah Ice, and his roommate, Jay. Ms. Ice testified on behalf of appellant. She believed that appellant fed his dogs the best food he could buy. She felt Agent Kulina was rude. She denied that appellant missed the second appointment with the veterinarian on January 4, 2005, and felt that appellant was dealing with the veterinarian as required.
 {¶ 10} Appellant's friend, Hugh Bolton, testified that he provided appellant with transportation to purchase dog food as needed and to the veterinarian. Bolton did not know the condition of the dogs.
 {¶ 11} Appellant testified on his own behalf. He said that he cared for his dogs and kept them in a cage in his bedroom. His dogs were as important to him as his infant child. He maintained that he fed the dogs properly and complied with the Humane Society order to have the dogs seen by a veterinarian. Appellant said he first noticed the dogs were losing weight two weeks before Agent Kulina came to his apartment. At first, he conceded he was late for the follow-up veterinarian visit, but then claimed the veterinarian failed to appear.[4]
 {¶ 12} Appellant raises five assignments of error:
First Assignment of Error
The trial court erred in admitting hearsay testimony that was used to establish that Appellant was negligent in the care of his dogs.
Second Assignment of Error
There was insufficient evidence to support Appellant's conviction on charges of animal neglect and the verdicts were against the manifest weight of the evidence.
Third Assignment of Error
The trial court erred in ordering that there be no animals in Appellant's home as a condition of probation.
Fourth Assignment of Error
The trial court erred in ordering Appellant to pay $3,000 in restitution payments to the Humane Society.
Fifth Assignment of Error
The trial court erred, in violation of Ohio's allied offense statute as set forth in R.C. 2941.25, in imposing consecutive terms for the two counts of animal neglect.
We address each assignment of error in order.
 {¶ 13} In his first assignment of error, appellant claims that inadmissible hearsay was introduced at trial and the erroneous admission of that evidence was prejudicial to his case. Appellant objects to the portion of Agent Kulina's testimony where she explained that she sought a search warrant to seize the dogs after being told that appellant had not scheduled a follow-up appointment with the veterinarian. Specifically, Agent Kulina testified that the veterinarian "stated that he did not reschedule." Appellant interposed a hearsay objection. The trial court overruled the objection finding that the answer was "not offered for the truth of the matter asserted [but was] * * * offered as to whether he complied." (Tr. at 24.) Defense counsel did not request a limiting instruction. Agent Kulina then explained that, when she learned that appellant did not schedule a required follow-up appointment, the next step in the investigation was to seek a warrant to seize the animals.
 {¶ 14} Hearsay is defined in Evid.R. 801. By definition, hearsay is a statement, made out of court, that is offered in court to prove that what was said in the statement is true. A statement that falls within the definition of hearsay in Evid.R. 801 is excludable under Evid.R. 802 unless it falls within one of the exceptions contained in Evid.R. 804.
 {¶ 15} Agent Kulina's testimony explained how the Humane Society conducts investigations and that she found appellant's dogs in "terrible condition" on December 12, 2004. Initially, she decided to have appellant take the dogs to a veterinarian rather than impound the animals. She explained that she later decided to seek a warrant to seize the dogs after learning that appellant had not scheduled follow-up care. We find the evidence was relevant to enable the jury to fully understand the case.
 {¶ 16} Although relevant, evidence must also be admissible. Generally, the decision to admit or exclude relevant evidence rests within the sound discretion of the trial court. State v.Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. An appellate court reviews a trial court decision to admit or exclude evidence on an abuse of discretion standard. State v.Lumpkin, Franklin App. No. 05AP-656, 2006-Ohio-1657, citingState v. Mardis (1999), 134 Ohio App.3d 6, 20. To be an abuse of discretion, the trial court's decision must be unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Absent a clear showing that the court abused its discretion in a manner that materially prejudices a party, a reviewing court will not disturb a ruling on the admission of evidence. Sidenstrickerv. Miller Pavement Maintenance, Inc., 158 Ohio App.3d 356,2004-Ohio-4653, at ¶ 23; Krischbaum v. Dillon (1991),58 Ohio St.3d 58, 65.
 {¶ 17} In order to be considered hearsay, two elements are necessary. First, there must be an out-of-court statement. Second, the statement must be offered to prove the truth of the matter asserted therein. If either element is not present, the statement is not hearsay. State v. Maurer (1984),15 Ohio St.3d 239, 262. Additionally, to be excludable as hearsay, "the statement must derive its primary value by showing the truth of the matter asserted." State v. Durr (1991), 58 Ohio St.3d 86,91, certiorari denied, 502 U.S. 912, 112 S.Ct. 310; Potter v.Baker (1955), 162 Ohio St. 488. The fact that the statement might also have value as proof of the truth of the matter asserted is not controlling. Instead, the test is whether the primary value of the statement is the truth therein.[5]
 {¶ 18} Where the out-of-court statement is not offered to prove that the content of the statement is true, but to explain the conduct of another person, the out-of-court statement is not objectionable as hearsay. State v. Skatzes, 104 Ohio St.3d 195,2004-Ohio-6391, at ¶ 98, citing State v. Thomas (1980),61 Ohio St.2d 223, 232. In Thomas, there was evidence that police had been told that a "sports bookmaking operation" was being conducted at a particular location. That statement was not offered to prove that a sports bookmaking operation was being conducted, but to show why investigators took action. Id. "Thus, extrajudicial statements by an out-of-court declarant are properly admissible to explain subsequent investigative or other activities of the witness to whom statement was directed." Statev. Cockroft, Franklin App. No. 04AP-608, 2005-Ohio-748, citingThomas, supra.
 {¶ 19} Here, the statement that appellant did not schedule a follow-up appointment did not derive its primary value by showing the truth of the matter asserted. See Durr, supra. The failure to provide proper veterinarian services is not an element of R.C.959.131(C)(2). That section involves deprivation of necessary sustenance, food and water, shelter from heat, cold, rain or excessive sunlight; not health care. Therefore, the fact that appellant failed to schedule a follow-up appointment with a veterinarian was not the primary value of the statement. Instead, the primary value of the out-of-court statement was to explain why Agent Kulina applied for a warrant to seize the dogs.
 {¶ 20} Although the trial court's explanation for the ruling is not as clear as it might have been, we cannot say that the trial court abused its discretion in this case. It appears that the court found that the statement explained why Agent Kulina sought a warrant to seize the dogs after originally leaving them in appellant's care. That was the context of Agent Kulina's earlier testimony as she explained the various components of her investigation up to and including the decision to seek a warrant. As an explanation for later acts and where the statement did not derive its primary value from the truth therein, it was within the discretion of the trial court to admit the statement.Thomas; Durr, supra.
 {¶ 21} Although we find that the trial court was within its discretion in admitting the statement, the court failed to give a limiting instruction to the jury. The trial court should have done so. However, defense counsel made no request for an instruction, either at the time of the ruling or later when the court instructed the jury at the end of the case. Therefore, reversal would be warranted only if the matter is considered plain error. Notice of plain error should be taken only in the exceptional case, with the utmost caution and then, only to prevent a manifest miscarriage of justice. E.g. State v. Long
(1978), 53 Ohio St.2d 91, paragraph one of the syllabus. That is not the case in this appeal. The statement did not tend to prove any element of the offense charged. Even if the trial court erred in admitting the statement without giving a limiting instruction, the error was not prejudicial to the right of the defendant to a fair trial. Therefore, the first assignment of error is overruled.
 {¶ 22} In his second assignment of error, appellant argues that his conviction is not supported by sufficient evidence and is against the manifest weight of the evidence. Paragraph two of the syllabus of State v. Thompkins (1997), 78 Ohio St.3d 380, provides as follows: "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." Evidence is sufficient if its adequate to support a jury verdict. Id. In contrast, where an appellate court reviews a claim that a verdict is against the manifest weight of the evidence, the court sits as a "thirteenth juror" and either agrees or disagrees with the fact finder's resolution of conflicting testimony. Id. at 387. In Thompkins, the Supreme Court of Ohio quoted with approval from State v. Martin (1983),20 Ohio App.3d 172, 175:
* * * The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins, at 387.
 {¶ 23} In this case, the state presented the testimony of Dr. Whitlock, the veterinarian who had examined appellant's dogs following their impoundment. In Dr. Whitlock's opinion, the emaciated condition of the dogs was due to lack of food, not whipworms. Dr. Whitlock noted the dogs both lacked bloody diarrhea, a symptom of whipworms.[6] Even assuming that the dogs had been infected with whipworms, Dr. Whitlock offered her expert opinion that, in 31 years as a veterinarian, she had never seen a whipworm infection cause severe weight loss such as was the case with appellant's dogs. Finally, after being fed appropriately, the dogs regained their normal weight, further evidence that appellant had failed to provide the animals with adequate sustenance.
 {¶ 24} Appellant did not present the testimony of his own veterinarian who had examined the dogs, or of any other qualified professional. Instead, appellant relied on lay testimony that the dogs were well fed, cared for and lost weight because they had worms. It was the province of the jury to believe or disbelieve the evidence presented by the parties. If believed, the evidence offered by the state, including the pictures of the dogs, the testimony of Dr. Whitlock, and the dogs' recovery after being properly fed supports the jury verdict. We have reviewed the complete record under the standard set out in Thompkins.
Because the verdict is supported by sufficient evidence and is not against the manifest weight of the evidence, the second assignment of error is overruled.
 {¶ 25} Appellant's third assignment of error calls into question a condition of probation imposed by the trial court. As a condition of his probation, the trial court ordered that appellant not have any animals at his home. Appellant argues that this and unreasonably restricted appellant's girlfriend, his friends, roommate and his children. We disagree.
 {¶ 26} A trial court has broad discretion in setting terms of probation. A court should consider whether the condition is: (1) reasonably related to rehabilitation of the offender; (2) has some relationship to the crime of which the offender was convicted; and (3) relates to the criminal conduct or is reasonably related to future crime and serves the statutory ends of probation. State v. Jones (1990), 49 Ohio St.3d 51. While the legislature chose to rename the traditional concept of probation as "community control," these basic principles apply.
 {¶ 27} Appellant was found guilty of failing to provide his animals with adequate food. The dogs were emaciated. Appellant's protestations aside, the evidence shows that the dogs were not suffering from intestinal parasites; they were starving because of appellant's willful neglect. The condition that appellant not have animals at his home is clearly related to the crime for which appellant was convicted and relates to his criminal conduct and is related to future criminality, failing to feed other animals. Finally, the condition that appellant not have animals during his probation is reasonably related to his rehabilitation. The Jones test is satisfied.
 {¶ 28} Appellant argues that the probation condition is overly intrusive because it affects his girlfriend, his roommate and his infant child. We disagree. Conditions of probation often affect others who may be related to the offender in some way. Loss of driving privileges may affect a household member that cannot drive. A prohibition against having contact with persons under the age of 18 directly affects whether the offender's minor children can invite minor friends to the home they share with the offender. Yet these conditions of probation are regularly imposed and upheld on review. The third assignment of error is overruled.
 {¶ 29} In his fourth assignment of error, appellant takes issue with the trial court order that he pay restitution to the Humane Society. During sentencing, the City Prosecutor sought an order that appellant pay $9,741 to the Humane Society as restitution for the cost of care of the impounded animals. The trial court reduced the amount to $3,000 in restitution. Defense counsel did not contest the restitution order at the time.[7] However, appellant now contests the authority of the trial court to order payment to the Humane Society.
 {¶ 30} Appellant relies on several decisions of other districts of the Ohio Court of Appeals for the proposition that payment to humane societies is not authorized by Ohio law. In turn, the state argues that the cases relied upon by appellant arose under former R.C. 2929.21 which has been re-codified as R.C. 2929.28. Appellee notes that R.C. 2929.21(C) authorized restitution only for property damage, not an issue in this case, while R.C. 2929.28 authorizes restitution for "economic loss." Appellee argues that the sentencing court must consider the economic harm not only to the victim, but to the public as well.
 {¶ 31} R.C. 2929.28(A) authorizes a court that is imposing sentence for a misdemeanor to impose "financial sanction or combination of financial sanctions authorized under this section." Subparagraph (A)(1) of that section authorizes "restitution by the offender to the victim of the offender'scrime or any survivor of the victim, in an amount based on the victim's economic loss." R.C. 2929.28(A)(1). (Emphasis supplied.) Subparagraph (A)(2) authorizes fines for each degree of misdemeanor. Subparagraphs (A)(3)(a)(i) and (a)(ii) authorize reimbursement of the costs incurred by the government in implementing a community control sanction and the cost of confinement in a jail or residential facility.
 {¶ 32} Appellee quotes a portion of R.C. 2929.21(A), in support of its argument that the trial court must consider "the impact of . . . making restitution to the victim of the offense, the public, or the victim and the public." (Appellee's brief, at 17.) While R.C. 2929.21(A) directs the court to consider those factors, that section does not grant authority to order restitution to the public. The authority for financial sanctions, including restitution, is contained in R.C. 2929.28. As outlined above, R.C. 2929.28 authorizes restitution to be made to the victim or survivors of the victim for economic loss, and to the government, but only for the cost of community control or certain forms of confinement. We find no authority in R.C. 2929.28 that would authorize a sentencing court to reimburse a Humane Society for the cost of care of animals seized under R.C. Chapter 959. The fourth assignment of error is sustained.
 {¶ 33} In his final assignment of error, appellant asserts that, under R.C. 2941.25(A), the trial court was bound to merge his convictions and impose a single sentence. This assignment of error lacks merit.
 {¶ 34} Where a defendant's conduct injures multiple victims, the defendant may be convicted and sentenced for each offense involving a separate victim. See State v. Jones (1985),18 Ohio St.3d 116; State v. Caudill (1983), 11 Ohio App.3d 252; Statev. Lapping (1991), 75 Ohio App.3d 354. In Lapping, the defendant was convicted of 28 counts of animal cruelty upon proof that he failed to provide adequate food and shelter to a herd of cows. Each offense was found to be of dissimilar import and sentencing on all counts was upheld.
 {¶ 35} Here, appellant committed crimes that involved two separate victims. Sentencing on each offense is authorized by R.C. 2941.25(B). The fifth assignment of error is overruled.
 {¶ 36} Having fully reviewed the record, assignments of error, and briefs of the parties, we find that the first, second, third and fifth assignments of error lack merit and are overruled. The fourth assignment of error is sustained. The matter is remanded to the trial court with instructions to delete the order of restitution to the Capital Area Humane Society. In all other respects, the conviction and sentence are affirmed.
Judgment affirmed in part, reversed in part and remanded withinstructions.
Klatt, P.J., and Brown, J., concur.
[1] See R.C. 959.132(B).
[2] (Tr. at 24.) Appellant's objection to this testimony is the subject of the first assignment of error.
[3] Intestinal whipworms cause bloody diarrhea. The dogs did not have bloody diarrhea.
[4] (Tr. at 204-207.)
[5] In Durr, supra, the defendant was charged with the murder of Angel Vincent. A witness recounted an out-of-court statement: "That Darryl Durr trashed Angel." The Supreme Court of Ohio found that the statement did not derive its primary value from the truth contained in the statement but, instead, was admissible "to prove her recollection of the events surrounding Angel's disappearance." Id. at 91.
[6] Appellant relies on a statement of Agent Kulina, admitted at a pretrial suppression hearing, to the effect that appellant's veterinarian had advised that the dogs were positive for whipworms and one had a flea allergy. However, this information was not presented before the jury and cannot be considered in resolving the second assignment of error.
[7] See (Tr. at 245-247.)